STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. RE-09-111

ROBERT F. ALMEDER et al.,

Plaintiffs,

v.

TOWN OF KENNEBUNKPORT et al.,

Defendants.

**ORDER ON DEFENDANT'S MOTION IN LIMINE**

Defendant Town of Kennebunkport filed a motion in *limine* to exclude the testimony of J. Gordon Scannell, Jr., Esq., an attorney at law whom Plaintiffs have designated as an expert to testify in the upcoming trial. Plaintiffs hold Attorney Scannell out to be an expert in the area of real estate law, and offer his prospective testimony to aid the court in its interpretation of deeds in issue.

The Town argues that Attorney Scannell does not have particular expertise regarding disputed factual issues in the case in that he lacks specialized knowledge of historical drafting language and historical monuments referenced in the deeds, and because he lacks personal knowledge of the standards used in Plaintiffs' title searches. It is the Town's contention that his testimony will only address issues of law, and therefore should be excluded.

"The qualification of an expert witness and the scope of his opinion testimony are matters within the discretion of the trial court." *Tolliver v. DOT*, 2008 ME 83, ¶ 28, 948 A.2d 1223. It would appear that Attorney Scannell is qualified as an expert generally in the area of real estate law. This is a bench trial, and objections raised by the Town appear to go more toward weight than

1

admissibility. *See State v. Tibbetts*, 572 A.2d 142, 143; (Me. 1990); *Warren v. Waterville Urban Renewal Authority*, 235 A.2d 295, 300-01 (Me. 1967).

The court is not inclined at this point to preclude altogether Plaintiffs' expert from testifying. Any objections as to particular testimony at trial are preserved.

Accordingly, the motion in *limine* to exclude testimony of J. Gordon Scannell, Jr., Esq. is DENIED.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED.**

DATE: November 17, 2016

Wayne R. Douglas
Justice, Maine Superior Court

2

STATE OF MAINE
YORK, ss. `

SUPERIOR COURT
Civil Action
Docket No. RE-09-111

ROBERT F. ALMEDER, *et al.*,

Plaintiffs

v.

ORDER AFTER FINAL
PRETRIAL CONFERENCE

TOWN OF KENNEBUNKPORT *et al.*,

Defendants

A final pretrial conference was held on November 16, 2016. In attendance were: Christopher E. Pazar, Esq., and Benjamin M. Leoni, Esq., representing Plaintiffs; Melissa A. Hewey, Esq., Amy K. Chao, Esq., and David M. Kallin, Esq., representing the Town of Kennebunkport.

1. **Pending motions.** The following motions are pending. Action thereon is indicated.

   a. The Town's 9/15/2016 Motion *in Limine* to Exclude Testimony of J. Gordon Scannell, Jr., Esq., will be denied in a separately issued order.

   b. Plaintiffs' 10/26/2016 Motion for Substitution is granted.

   c. Plaintiffs' 10/26/2016 Motion for Joinder is granted.

   d. Plaintiffs' 11/4/2016 Motion for Dismissal as to Plaintiff Janice Fleming is granted with prejudice.

2. **Clarification of Status of Parties.** On November 9, 2016 Plaintiffs filed a Notice of Present Plaintiffs and Parties Defending Counterclaims. The notice lists 24 plaintiffs and an additional five parties-in-interest who are not asserting claims but are defending against the Town's counterclaims. Four

1

additional parties[1] who were previously plaintiffs in this matter are not listed. They had dismissed their appeal of the court's 2012 partial judgment but may not have dismissed their claims. Their status in the case is unclear. In addition, as noted above Plaintiff Janice Fleming is being dismissed from the action (with prejudice) because she has sold her property. The purchasers[2] of her property, however, are not currently parties to this action. Plaintiffs' counsel agreed to follow up and file appropriate motions, if any, in order to clarify the status in this action of the foregoing parties and/or property owners.

3. **Exchange of Witness and Exhibit Lists.** Counsel represented that they have exchanged final exhibit and witness lists. A copy shall be filed with the court.

4. **Trial.** Trial shall commence at 9:00 am on Wednesday November 30, 2016, and is anticipated to run through the morning of December 9, 2016.

5. **Courtroom.** Although the court discussed with counsel the prospect of conducting the trial in the second-floor library, upon further reflection, given the requirements of this trial and the potential need to accommodate parties and members of the public who may be planning to attend, the court is setting this matter for trial in courtroom 2, which is the main courtroom on the second floor. The court may reassess the need to continue in that courtroom as the trial progresses.

6. **Recording.** It is the court's understanding at this time that counsel's request for a court reporter is still pending in the Judicial Branch's Office of

---

[1] Linda Rice, Ann Clough, Joan Dwelley Testamentary Trust, and Susan Lewis.

[2] According to Plaintiffs' November 3ʳ motion for dismissal as to Plaintiff Janice Fleming, her property was purchased by J. Rodney Walton, Jr. and Shelley B. Walton.

Transcript Operations (OTO). At the conference, counsel were amenable to using the court's digital electronic recording system to record the proceeding if a court reporter is not available, or if it would take substantially longer to obtain a transcript of the trial. The clerk will continue to communicate with OTO to determine whether a reporter will be available.

7. Trial Briefs. Counsel shall file by 4:00 pm on Monday November 28, 2016 at trial brief not exceeding 20 pages as discussed at the conference. The format of trial briefs shall comply with M.R. Civ. P. 7(f). Counsel also have the option of also filing proposed findings of fact prior to trial. The court will be requesting proposed findings of fact and conclusions of law as well as post-trial briefs following the conclusion of trial.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

SO ORDERED.

DATE: November 17, 2016

Wayne R. Douglas
Justice, Maine Superior Court

STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         CIVIL ACTION
                                                  DOCKET NO. RE-09-111

ROBERT F. ALMEDER et al.,          )
                                   )
                                   )
          Plaintiffs,              )
                                   )                    ORDER
v.                                 )
                                   )
TOWN OF KENNEBUNKPORT and          )
ALL PERSONS WHO ARE                )
UNASCERTAINED,                     )
                                   )        (Title to Real Estate Involved)
          Defendants.              )

UPON CONSIDERATION OF the Motion of Plaintiffs William D. Forrest and Nancie

M. Julian to join SIP SIP North Condominium Association, a Maine nonprofit corporation, as a

party plaintiff and counterclaim defendant in this action, with/without objection, with/without

hearing, the motion is GRANTED.

IT IS SO ORDERED that SIP SIP North Condominium Association, a Maine nonprofit

corporation, is joined as a party plaintiff and counterclaim defendant in the above-entitled matter.

The clerk is directed to incorporate this Order into the docket by reference. M.R. Civ. P. 79(a).

Dated: ____11/16/2016____          _____
                                   Superior Court, Justice

1

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-09-111

ROBERT F. ALMEDER et al.,

        Plaintiffs,

v.

TOWN OF KENNEBUNKPORT and
ALL PERSONS WHO ARE
UNASCERTAINED,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER

(Title to Real Estate Involved)

UPON CONSIDERATION OF the Motion of Plaintiffs and heirs of Deborah Kinney, Jonathan Sherman and Jeffrey Sherman, to substitute Sherman/Kinney Properties II, LLC, a Maine limited liability company, as a party in this matter, with/without objection, with/without hearing, the motion is GRANTED.

IT IS SO ORDERED that Sherman/Kinney Properties II, LLC, a Maine limited liability company, is substituted in the place of Deborah Kinney, deceased, as a party plaintiff and counterclaim defendant in the above-entitled matter. The clerk is directed to incorporate this Order into the docket by reference. M.R. Civ. P. 79(a).

Dated: 11/16/2016

_____
Superior Court, Justice

1

STATE OF MAINE
YORK, ss.

SUPERIOR COURT
Civil Action
Docket No. RE-09-111

ROBERT F. ALMEDER, *et al.*,

Plaintiffs

v.

TOWN OF KENNEBUNKPORT *et al.*,

Defendants

**SCHEDULING ORDER**

**1. Trial.** This case has been set for a non-jury trial commencing on November 30, 2016 and running through December 9, 2016.

**2. Final Pretrial Conference.** The court shall conduct a final pretrial conference on November 16, 2016 at 1:00 pm.

**3. Exchange of Witness and Exhibit Lists.** Parties shall exchange trial exhibit and trial witness lists not later than November 14, 2016. Witness lists shall include the name and place of residence or business address of all witnesses with a notation as to any witness to be called as an expert. All exhibits and visual aids must be marked with corresponding numbers before commencement of the trial session. Witnesses or exhibits not listed may be excluded upon objection or upon the court's own motion. At the request of a party, an opposing party shall display all exhibits and visual aids not later than 7 days prior to the beginning of the trial.

**4. Motions.** Any additional motions *in limine* shall be supported as required by M.R. Civ. P. 7 and shall be filed not later than October 24, 2016. Oppositions, if any, shall be filed by November 14, 2016.

1

**5. Stipulations.** Parties are encouraged to stipulate to matters that will expedite the trial, to the admissibility of uncontested exhibits and to offer duplicate exhibits as joint exhibits. Stipulations shall be filed in writing with the court by November 14, 2016.

**6. Trial Briefs.** Any party may file a trial brief addressing the legal and factual issues to be presented at trial. The format of trial briefs shall comply with M.R. Civ. P. 7(f). The court will determine the page limit for trial briefs at the final pretrial conference.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED.**

DATE: September 29, 2016

Wayne R. Douglas
Justice, Maine Superior Court

2

STATE OF MAINE                                    SUPERIOR COURT
YORK, ss.                                         Civil Action
                                                  Docket No. RE-09-111


ROBERT F. ALMEDER et al.,

                 Plaintiffs,

                                                       ORDER ON
        v.                                        PENDING MOTIONS[1]

TOWN OF KENNEBUNKPORT et al.,

                 Defendants.

This order addresses the following motions: Plaintiffs' request under M.R. Civ. P

55(a) for entry of default against "all persons unascertained;" the State of Maine's

motion for an order to amend and conform the pleadings; and Plaintiffs' two motions

that seek rulings *in limine* on anticipated evidentiary and procedural issues at trial.

1.   **Plaintiffs' Request for Default against "All Persons Unascertained"**

Pursuant to court order of August 30, 2010, as amended by an order of

September 10, 2010, Plaintiffs served notice by publication to "Persons who are

Unascertained and to the General Public."[2]   The notice was published in the Portland

Press Herald on three days over three consecutive weeks—on September 16th, September

23rd, and September 30th, 2010.   (Notice of Filing Aff. of Publication: Portland Press

Herald (Oct. 5, 2010).)   The notice specifically identified the date, location and nature

---

[1] On September 19, 2016 the Town of Kennebunkport filed a motion *in limine* seeking to
exclude the testimony of Plaintiffs' designated expert, Gordon Scannell, Esq., at trial.   Since the
21-day response period under the rules has yet to run, this order does not address the Town's
motion.

[2] Plaintiffs initially published a notice of this action in the York County Journal Tribune
over three consecutive weeks in late 2009, attempting service by publication to "persons who
are unascertained and the general public" of this action.   Because there had not been prior
court authorization under Rule 4, notice was published again in 2010.

1

of the pending action, the names and addresses of the Plaintiffs, as well as the present Defendants in the lawsuit.[3] Plaintiffs have filed a request for an entry of default against "all persons unascertained" pursuant to M.R. Civ. P. 55(a).

Rule 55(a) provides that the clerk "shall enter" a default with respect to "a party against whom judgment for affirmative relief is sought" when that party "fails to plead or otherwise defend as provided by these rules and the fact is made to appear by affidavit or otherwise." *Id.* There being no objection, Plaintiffs' request for entry of default is granted. Pursuant to Rule 55(a), the clerk, shall enter a default against:

> "all persons who are unascertained, not in being, unknown or out of the State, heirs or legal representatives of such unascertained persons, or such persons as shall become heirs, devisees or appointees of such unascertained persons who claim the right to use or title in plaintiffs' property other than persons claiming ownership or easement by, through, or under an instrument recorded in the York County Registry of Deeds."

## 2. State of Maine's Motion to Amend and Conform Pleadings

The State filed a motion to amend its pleading to conform to the evidence and proceedings in this action in order to "reflect that the State has litigated the claim that extensive public trust rights exist in the intertidal zone so that the State may further participate in and, as needed, appeal this Court's decision of the public trust 'claim.'" (State's Mot. for Order to Am. and Conform Pleadings 1.)[4] The motion comes in the

---

[3] The notice identified "present defendants" named in the lawsuit as "the Town of Kennebunkport, the State of Maine, Alexander M. Lachiatto and Judith A. Lachiatto; John Michie Harris and Sharon Eon-Harris; Richard J. Driver and Margarete K. M. Driver; and all persons who are unascertained, not in being, unkown or out of the State, heirs or legal representatives of such unascertained persons, or such persons as shall become heirs, devisees or appointees of such unascertained persons who claim the right to use or title in plaintiffs' property other than persons claiming ownership or easement by, through, or under an instrument recorded in the York county Registry of Deeds.".

[4] Specifically, the motion seeks to add a one-paragraph counterclaim to the State's initial pleading, entitled, "Answer, Defenses and Counterclaims of State of Maine." The counterclaim would assert: "The public and individual members of the public have public

2

wake of the Law Court's 2014 decision vacating this court's 2012 partial judgment, noting that "no claims implicating the public trust doctrine are properly before us for review" because "the only claim to implicate the public trust" in the case was plaintiffs' title claim, which had yet to be addressed, and because the State had not filed a separate claim raising the public trust doctrine. *Almeder et al. v. Town of Kennebunkport et al.*, 2014 ME 139, ¶ 37, 106 A.3d 1099.

Plaintiffs oppose the State's motion. They contend that the motion is untimely, and that the Law Court has already dismissed the public trust claim as untimely. Further, they contend that the State's claim of public trust rights is not justiciable and amounts to a request for an advisory opinion because there has been no infringement of the public's use rights, and that the public trust use rights in the intertidal zone are coextensive with common law rights of fishing, fowling and navigation, and subsumed by the public's rights to use the beach for recreational activities pursuant to the presumption of permissive use in the intertidal zone.

M.R. Civ. P. 15(b) provides that "[s]uch amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment." Moreover, leave to amend a pleading "shall be freely given when justice so requires." M.R. Civ. P. 15(a). "[I]f the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice." *Chrysler Credit Corp. v. Bert Cote's L/A Auto Sales*, 1998 ME 53, ¶ 15, 707 A.2d 1311. Undue prejudice may result when a proposed amended claim introduces an entirely new issue that has not been previously raised or litigated. *Bangor Motor Co. v. Chapman*, 452 A.2d 389, 393 (Me. 1982). Whether to

---

trust rights which include the rights to use the intertidal zone of Goose Rocks Beach for recreational purposes related *and unrelated* to fishing, fowling and navigation." (Proposed Am. Answ., 8 )(*Emphasis added*).

3

allow a motion to amend "is left to the discretion of the trial court." *Bernier v. Merrill Air Eng'rs*, 2001 ME 17, ¶ 22, 770 A.2d 97.

The State of Maine sought to intervene as a defendant in this case, "citing the public interest in maintaining access to Maine's beaches." Order, Aug. 17, 2010, at 3. The court granted its motion, noting that "[t]his broad public interest in Maine's coast is distinct from the Town's particular interest in Goose Rocks Beach." *Id.* The State participated fully in the 2012 trial in this matter that focused directly upon the nature and extent of the public's rights in and use of Goose Rocks Beach. The State presented and queried witnesses at trial; submitted proposed findings of fact, conclusions of law and legal memoranda; and participated in the subsequent appeal to the Law Court.

Plaintiffs' complaint seeks (i) a declaration that they are "vested with title . . . free and clear of all claims . . . subject only to the public rights of usage in the Intertidal Property established by the Colonial Ordinance of 1647" (Count I for declaratory relief) and (ii) a judgment barring all claims of right in their property "subject to the limited public right in the Intertidal Property to fish, fowl and navigate as defined in the Colonial Ordinance of 1647" (Count II to quiet title). The scope of the public's use rights in the intertidal zone that are acknowledged by Plaintiffs is narrower than the scope of the public trust rights for which the State advocates. The extent of the general public's recreational rights in the intertidal zone encompassed by the presumption of permission would also appear to be narrower than the public trust rights claimed by the State because the former are merely permissive.

Accordingly, the States' motion to amend is granted solely to align the State's pleading with the reality of what has already transpired in this case, notably a full trial on the public prescriptive easement and public trust issues. The court reserves

4

judgment as to any other issues that may arise depending on the outcome of the title trial, including the issue of whether the State's claim is justiciable at that point.[5]

### 3. Plaintiffs' July 8, 2016 Joint Motion *in Limine*

Plaintiffs request in their July 2016 motion that the court issue an order (a) declaring that Justice Brennan's interpretation of the Danforth Deed in his 2011 summary judgment ruling is "law of the case" and not subject to re-litigation in this matter; and (b) requiring a party to make a threshold showing of title in order to "remain as a party in the title portion of this case," i.e. have standing to challenge the opposing party's title. With regard to the latter issue, Plaintiffs also request that the court articulate the applicable burden of proof and the order of proof at trial.

**a. Law of the Case and the Danforth Deed.** The law of the case doctrine reflects the "wise policy that a judge should not in the same case overrule or reconsider the decision of another judge of coordinate jurisdiction." *Blance v. Alley*, 404 A.2d 587, 589 (Me. 1979) The doctrine serves a "practical judicial policy" that rulings on questions of law that are "clearly decided in the same action" should not be reopened by another judge in the same case except for "the most compelling reasons." *Sprague v. Washburn*, 447 A.2d 784, 787 (Me. 1982)

The law of the case doctrine resembles but does not operate as *res judicata*; nor does it deprive a judge of jurisdiction or power to rule differently on a question of law that previously has been decided by a different judge in the same case. *Id.; Grant v. City of Saco*, 436 A.2d 403, 405 (Me. 1981); *Sprague v. Washburn*, 447 A.2d 784, 787 (Me. 1982). *See also Messenger v. Anderson*, 225 U.S. 436, 444 (1912) *(Holmes, J.)* The doctrine

---

[5] If, for example, the Town were to prevail on its counterclaim for title, there may be a question as to whether any further relief sought by the State of Maine would raise a justiciable claim in this case.

does not bar revisiting a prior ruling on a legal issue when there is a lack of clarity, the availability of new evidence, or a need to correct error or prevent manifest injustice. *Lord v. Murphy*, 561 A.2d 1013, 1017 (Me. 1989). The Law Court has held that if a prior legal ruling in a case is erroneous it may be an abuse of discretion to invoke the law of the case doctrine as a reason for not revisiting it. *Id.*

The interpretation of a deed's language is a question of law. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 19, 760 A.2d 232; *Bennett v. Tracy*, 1999 ME 165, ¶ 7, 740 A.2d 751. In interpreting the Danforth Deed, Justice Brennan applied the conventional canons of legal construction[6] and concluded: "On its face, this document has the appearance of a deed, but it is a deed that only acted to confirm legal title to lands previously granted to the Town's earliest settlers;" and thus "the 1684 document does not convey any grant of new title, specifically the common and undivided lands within the Town's boundaries, to the Town." Order on Mot. for Summ. J. Dec. 22, 2011, at 6, 8. This ruling was based on a careful review of the deed's language, an extensive summary judgment record including an analysis of the surrounding circumstances and historical context, and citation to supportive legal precedent.

Justice Brennan's interpretation of the Danforth Deed appears sound, and worthy of deference. However, his ruling was made at the summary judgment phase of this proceeding and, more precisely, in the context of denying both the Town's motion for summary judgment and the Plaintiffs' cross-motion for summary judgment

---

[6] Construe a deed to give effect, if possible, to the intention of the parties; consider all words of a grant in light of the circumstances and conditions attending the transaction; look first within the "four corners" of the document; give words in the deed their "general and ordinary" meaning to determine any ambiguity; and do not consider extrinsic evidence of intent if the deed's language is unambiguous. Surrounding circumstances attendant to the execution of the deed, including the historical context in which it was executed, may be considered even if the plain language of the deed is unambiguous. Order on Mot. for Summ. J. Dec. 22, 2011, at 5 – 6.

6

on count I of the Town's counterclaim. Justice Brennan concluded that based on the summary judgment record before the court that the Town "had *failed to prove* as a matter of law" that the Danforth Deed was the document that conveyed title to the common and undivided lands to the Town. Order Mot. for Reconsid. Jan. 18, 2012, at 2 (Emphasis added). Even if the court concurs with Justice Brennan's conclusion that the deed's language is unambiguous, relevant evidence concerning attendant circumstances or historical context in addition to that contained in the summary judgment record, for example, may be offered at trial. The law of the case doctrine should not operate in these circumstances to limit consideration of potentially relevant evidence at trial. The court will make its final determination as to the meaning and effect of the Danforth Deed after considering all relevant evidence.

Moreover, based on the summary judgment record, the court further concluded that there remained material factual disputes concerning both Plaintiffs' and the Town's title claims. Plaintiffs had failed to prove that "title [to] the flats was vested in private hands" at the time the Town claims to have gained title to the intertidal zone. And, although the Town "still has a viable claim" of title that could overcome Plaintiffs' *prima facie* claim of title, "the implication that title to the common and undivided lands was vested in the Town raises a genuine issue of material fact to be resolved at trial." Order Mot. for Reconsid. Jan. 18, 2012, at 2, 4. Even if the Danforth Deed is not the source deed of the Town's title, it could still have relevance to its title claims by implication or otherwise. To the extent the motion seeks its exclusion *in limine*, the motion is denied and the court reserves judgment as to the admissibility and ultimate significance of the document until a more complete record is established at trial.

**b. Town's Standing.** Plaintiffs challenge the Town's standing to contest their own *prima facie* title claims unless the Town first can demonstrate "color of title." They

7

maintain that the Danforth Deed cannot satisfy that showing because the court has already that ruled the deed "does not convey any grant of new title . . . to the Town." Order on Mot. for Summ. J. Dec. 22, 2011, at 8.

The Town has established sufficient color of title to remain as a party in this case, both to assert its own affirmative claim of title as well as to defend against or challenge plaintiffs' *prima facie* title claims. Color of title may be demonstrated by "[a] written instrument or other evidence that appears to establish title but does not in fact do so." *Blacks Law Dictionary*, 9th ed., at 302. Even if the Danforth Deed is not conclusive as to the Town's title claim, it would appear to satisfy this minimum threshold requirement. Moreover, apart from the Town's claim of title based on the Danforth Deed, there remain genuine issues of material fact concerning its potential claim of title by implication. *See* Order Mot. for Reconsid. Jan. 18, 2012, at 2. Even without its own affirmative title claim, the Town, which was named as a party defendant in this case, may have standing to contest claims of title in the intertidal zone of Goose Rocks Beach. *See Eaton,* 2000 ME 176, ¶ 19, 760 A.2d 232 (Town of Wells permitted to defend against claims of title to intertidal zone of Wells Beach even though it had no valid claim to title).

c. **Burden of Proof.** A party affirmatively asserting a claim of title in a quiet title/declaratory judgment action bears the risk of non-persuasion. *Hodgdon v. Campbell,* 411 A.2d 667, 669 (Me. 1980) Plaintiffs assert claims of title in and to their properties on Goose Rocks Beach, including the intertidal zone seaward of their upland properties. They bear the risk of non-persuasion under *Hodgdon,* and thus the burden of proof. *See also Marshall v. Walker,* 93 Me. 532, 535, 45 A. 497 (1900) (In quiet title action involving tidal flats, "[h]e who begins the litigation must and ought to carry the burden of proving title.") Conversely, since the Town has also asserted title to the

8

same tidal flats on the beach through its counterclaim, it too bears the burden of proof with respect to its claim. *Hodgdon*, 411 A.2d at 670-71. (Party asserting title, whether or not the nominal plaintiff in the action, bears risk of non-persuasion.)

A party claiming title has the initial burden of coming forward to present *prima facie* evidence of title. *Prima facie* evidence of title may be shown "by producing a warranty deed or quitclaim deed from a predecessor in the quitclaim deed who obtained title by a warranty deed or was in actual possession. A deed that only conveys the grantor's 'right, title and interest' is not a grant of a land or of a particular estate and is not *prima facie* evidence of title." Order Mot. for Reconsid. Jan. 18, 2012, *citing Sargent v. Coolidge*, 399 A.2d 1333, 1343 (Me. 1979). Where no such deed is provided, "*prima facie* evidence in legal intendment means evidence which if unrebutted or unexplained is sufficient to maintain the proposition, and warrant the conclusion to support which it [has been] introduced." *Hann v. Merrill*, 305 A.2d 545. 550 (Me. 1972), *citing Carroll v. Boston Elevated Railway Co.*, 200 Mass. 527, 86 N.E. 793, 797 (1909).

Plaintiffs contend that if they make a *prima facie* showing of title based on a deed, and if that showing is "unrebutted by similar record or instrument," then they are entitled to judgment as a matter of law. However, *prima facie* evidence of title alone may or may not entitle a Plaintiff to a judgment; the court must consider other relevant evidence to determine whether, in the end, each party has satisfied his or her burden of proving title by a preponderance of the evidence. *See* Order Mot. for Reconsid. Jan. 18, 2012; *See also Eaton*, 2000 ME 176, ¶ 27, 760 A.2d 232. Evidence rebutting a party's *prima facie* showing may be relevant to the question of whether a that party has carried the burden of proving title by a preponderance of the evidence. *See Hodgdon v. Campbell*, 411 A.2d 667, 670 (Me. 1980); *Blance*, 330 A.2d at 798 (A party "may, however, always show that the [party asserting title] obtained nothing by his deed."); *Hann*, 305

9

A.2d at 550-51; *Ripley v. Trask*, 106 Me. 547, 76 A. 951, 952 (1910). *See Eaton*, 2000 ME 176, ¶ 27, 760 A.2d 232.

Ultimately, a party claiming title must present positive, affirmative proof of "better title," and may not rely merely on the weakness of the opposing party's title. *Sargent v. Coolidge*, 399 A.2d at 1342; *Blance*, 330 A.2d at 798; *Chaplin v. Barker*, 53 ME. 275 (1865).[7] In order to prevail, therefore, each individual Plaintiff bears the burden of proving by a preponderance of the evidence in light of all the evidence "better title than that of the [Town]" to the intertidal zone seaward of his or her upland beachfront property; and the Town, to prevail on its title claim, must prove the converse by a preponderance of the evidence. *See Hodgdon*, 411 A.2d at 671.

**d. Order of Proof.** Plaintiffs will proceed first to present evidence of *prima facie* title. Evidence will be presented on a parcel-by-parcel basis. Absent an agreement on the order or grouping of parcels, Plaintiffs may present their case in the order and manner they choose. Each Plaintiff bears the initial burden of establishing *prima facie* title with respect to his or her individual claim.[8]

---

[7] Cases articulating the standard of proof in title dispute cases have arisen in a variety of types of actions, including, for example, real actions (writs of entry); quiet title actions at law; quiet title actions at equity; and actions in trespass *quare clausum fregit*. Ultimately, as noted above, the party asserting an affirmative claim of title in a quiet title action bears the burden of proving by a preponderance of the evidence "better title" in the property than the opposing party. *See Hodgdon*, 411 A.2d at 670-71.

[8] The court's January 18, 2012 order denying plaintiffs' motion for reconsideration observed that the documents comprising the summary judgment record "do not show *prima facie* evidence of title for most of the Plaintiffs;" and suggested but withheld judgment that "a few of the Plaintiffs' current deeds appear to actually provide *prima facie* evidence of title (including Asplundh, Flynn, Gerrish, O'Connor/Leahy, Sandifer, Scribner, and Paley)." Order Mot. for Reconsid. Jan. 18, 2012, at 4.

Upon the conclusion of Plaintiffs' presentation of their *prima facie* cases, the Town may present its rebuttal evidence, if any, to Plaintiffs' *prima facie* title claims as well as evidence in support of its own *prima facie* claim of title.[9]

Plaintiffs will have an opportunity to rebut the Town's evidence as to both Plaintiffs' title claims and the Town's own *prima facie* title claim.

### 4. Plaintiffs' March 5, 2015 Motion *in Limine*

Plaintiffs' March 2015 motion requests that the court bar admission of testimony of the Town's designated experts, Robert A. Yarumian, II, and Knud E. Hermansen, as defined by their designations,[10] and further that any evidence or testimony concerning "modern" or "ancient" title "which claims as its genesis the Danforth Document" be excluded. Plaintiffs contend such testimony and evidence is irrelevant in light of the court's interpretation of the Danforth Deed in its order denying the Town's motion for summary judgment.

In light of the court's ruling above in section 3(a), the testimony of the designated experts may have relevance. There remain disputed material factual issues with respect to the title claims of both Plaintiffs and the Town. *See* Order on Mot. for Summ. J. Dec. 22, 2011, at 12-14; Order Mot. for Reconsid. Jan. 18, 2012, at 2 (Summary

---

[9] The ruling above that the Town has shown sufficient color of title to defend against Plaintiffs' title claims does not, *per se*, establish its own *prima facie* title claim. Nor had the Town established *prima facie* title based on the summary judgment record. The Town's two other grounds for claiming title (court II, adverse possession, and count III, acquiesence) are not before the court in this phase of the proceeding.

[10] According to his designation, Robert A. Yarumian, II, is expected to offer testimony as to, among other things, the modern and ancient title history of Goose Rocks Beach as well as the historical location of Plaintiffs' property and the property of their predecessors in title; and offer an opinion that title to the beach rests in the Town. Knud E. Hermansen's designation states that he will offer opinion testimony regarding, among other things, the history of Plaintiffs' properties and title thereto, including legal analysis of and opinion testimony concerning documents within the chain of title and the impact of those documents on interpreting property boundaries and ownership of the relevant portions of Goose Rocks Beach.

judgment record implies title to common and undivided lands vested in Town, and raises genuine issue of material fact to be resolved at trial). The proposed testimony of these experts may have relevance to all parties' affirmative title claims, whether or not those claims depend upon or involve the Danforth Deed. The additional objections to Mr. Hermansen's proposed opinion testimony on ground that it is cumulative of, and lacks an independent source of knowledge from, Mr. Yarumian's opinions are denied.

### 5. Summary of Order

a. Plaintiffs' Request for Entry of Default against "all persons who are unascertained " as more fully set forth above is GRANTED.

b. The State of Maine's Motion to Amend and Conform Pleadings is GRANTED.

c. Plaintiffs' July 8 2016 Joint Motion *In Limine* Regarding Law of the Case, Order of Proof and Burden of Proof is GRANTED IN PART with respect to the request to set out burden and order of proof, and DENIED in all other respects, as set forth above.

d. Plaintiffs' Motion *In Limine* Regarding Defendant's Expert Witness Testimony of Robert A. Yarumian, II, and Knud E. Hermansen is DENIED.

The clerk may incorporate this order upon the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

**SO ORDERED.**

DATE:    September 29, 2016

Wayne R. Douglas
Justice, Maine Superior Court

12

STATE OF MAINE                                           SUPERIOR COURT
                                                            CIVIL ACTION
YORK, ss.                                       DOCKET NO: RE-09-111


ROBERT F. ALMEDER and VIRGINIA
S. ALMEDER, et al.,

                    Plaintiffs
                                                            **ORDER**
        v.


TOWN OF KENNEBUNKPORT and
ALL PERSONS WHO ARE
UNASCERTAINED,

                    Defendants


        Approximately twenty-six owners of lots fronting Goose Rocks Beach in the

Town of Kennebunkport have brought this action seeking a declaration that they hold

fee title to the low-water mark and a judgment quieting that title. They do not dispute

any interests in the beach established by deed in the York County Registry. The named

defendants are the Town of Kennebunkport and "all persons who are unascertained,

not in being, unknown or out of the State, heirs or legal representative of such

unascertained persons, or such persons as shall become heirs, devisees or appointees of

such unascertained persons who claim the right to use or title in Plaintiffs' Property

other than persons claiming ownership or easement by, through, or under an

instrument recorded in the York County Registry of Deeds."

        A variety of motions relating to service, intervention, joinder, and various

counterclaims and defenses are before the court.

## 1.   Notice and Service

The plaintiffs filed their complaint on October 26, 2009, and on November 17, 2009 filed notice that they would provide the unascertained defendants with notice by publication in the Journal Tribune, a newspaper published in York County. An advertisement titled "Notice to Persons Who Are Unascertained and to the General Public Pursuant to 14 M.R.S. § 6653" was published among the paper's legal notices on November 20, 2009, November 27, 2009, and December 4, 2009. The plaintiffs did not request the court's permission to serve process by publication or obtain an order authorizing the action as Rule 4 requires. The defendant Town of Kennebunkport objects to the plaintiffs' action on the grounds that they failed to personally serve ascertainable potential claimants and failed to follow the appropriate procedure to permit notice by publication.

"Service of process serves the dual purposes of giving adequate notice of the pendency of an action, and providing the court with personal jurisdiction over the party properly served. . . . 'Any judgment by a court lacking personal jurisdiction over a party is void.'" *Gaeth v. Deacon*, 2009 ME 9, ¶ 20, 964 A.2d 621, 626 (quoting *Brown v. Thaler*, 2005 ME 75, P 10, 880 A.2d 1113, 1116). At hearing, the parties agreed through counsel to collaboratively effect personal service on the sixty-five owners of property on Goose Rocks Beach who are not currently named in this litigation. These are necessary parties subject to personal service of process who must be joined pursuant to Rule 19 if feasible. *See Eaton v. Town of Wells*, 2000 ME 176, ¶ 47, 760 A.2d 232, 248.

The parties also agreed to work collaboratively to provide notice to "unascertained" parties, by means of Rule 4(g) or other equally effective procedures. The court approves of these actions and will reserve ruling on the Town's objection to notice while they are underway. The parties will work together to create a new

2

scheduling order, and discovery shall proceed among those already named in this litigation.

## 2. The State of Maine's Motion to Intervene

The State seeks to intervene as a defendant pursuant to Rule 24, citing the public interest in maintaining access to Maine's beaches and its past involvement in the cases of *Eaton v. Town of Wells*, 2000 ME 176, 760 A.2d 232, *Bell v. Town of Wells*, 557 A.2d 168 (Me. 1989) (*"Bell II"*), *Bell v. Town of Wells*, 510 A.2d 509 (Me. 1986) (*"Bell I"*); *Opinion of the Justices*, 437 A.2d 597 (Me. 1981), and more recently *Flaherty v. Muther*, Cumb. Cty. Super. Ct. No. RE-08-098 (July 30, 2009) (Crowley, J.). In *Bell v. Town of Wells*, the Law Court recognized "that the Attorney General, as the chief law officer of the State, has the power and duty to institute, conduct and maintain such actions and proceedings as he deems necessary for the protection of public rights and to defend against any action that might invidiously interfere with the same." *Bell I*, 510 A.2d at 519 (quoting *In re Estate of Thompson*, 414 A.2d 881, 890 (Me. 1980)) (quotations omitted).

Like *Bell*, the resolution of this case "will affect the rights of the public at [this] beach and may through the persuasive authority of that decision affect public rights at other Maine beaches." *Id.* This broad public interest in Maine's coast is distinct from the Town's particular interest in Goose Rocks Beach, and cannot adequately be defended by unascertained members of the public at large. The State's motion to intervene is granted. As both the State and the Town will be representing the public's interest in the beach, the court declines the Town's suggestion to appoint a guardian ad litem to represent unascertained parties at this time.

## 3. The TMF Interveners; Richard & Mary Steiger's Motion to Intervene; Christopher & Janice Tyrrell's Motion to Intervene; Robert & Leslie Sullivan's Motion to Intervene; and Defendant Mark Smith's Motion to Substitute Counsel

3

The so-called TMF interveners are some 171 parties being represented by the law firm of Taylor, McCormack, & Frame, LLC. The original group consisted of 167 parties, but has grown to include Robert and Leslie Sullivan, Richard and Mary Steiger, Christopher and Janice Christo Tyrrell, and Mark W. Smith.[1] Also, three additional parties submitted responsive filings after the deadline to respond or intervene. These are Roger C. and Nancy H. Allen; Kendall and Linda Burford; and David Green and Jean French. Their answers and counterclaims are essentially identical to those of the TMF interveners, and they will be treated in kind.

All of the TMF parties appear to have some connection to the Goose Rocks Beach area of Kennebunkport, Maine, but none claim any deeded title to the beach itself. Instead, their proposed counterclaims assert that the fee title in the beach resides in the Town of Kennebunkport, and in the alternative that they the beach-going public have obtained easement rights under various theories. They seek to intervene as defendants and counterclaimants pursuant to Rule 24, asserting that they are the "unascertained persons . . . who claim the right to use or title in Plaintiffs' Property" and that while their interests overlap with the Town's, they are not currently being adequately represented.

The plaintiffs oppose the TMF interveners' motion on the grounds that they lack standing to assert a claim and have not met the requirements of Rule 24. The TMF interveners' alleged interest is essentially the public interest, which the plaintiffs argue is already being fully represented by the Town and the State. The plaintiffs also fear that allowing the TMF parties to intervene in the litigation would add significant

---

[1] Mr. Smith had been in the case as a pro se litigant, but now seeks to join the TMF group through his motion for substitution of counsel. His claims appear to overlap with those of the TMF group and his motion is granted. The plaintiffs' motion to strike his responsive documents is moot and denied. The Sullivans', Steigers', and Tyrrells' motions to intervene are identical to that of the original TMF group and they will be treated together.

complication and delay without any commensurate benefit to either the current parties or the interveners. The plaintiffs note that they would not object to granting the TMF interveners *amicus curiae* status, nor would they object to a group of interveners able to assert personal, rather than public, claims.

The TMF interveners have not cited any statutory right to participate in this litigation, so they may only enter the case if they satisfy Rule 24(a)(2) or receive permission under Rule 24(b). Rule 24(a)(2) requires the interveners to demonstrate an interest in the subject property, a likelihood that the resolution of this case will impair their ability to protect their interest, and that their interest is not already being adequately represented. Rule 24(b) allows the court to permit intervention if the would-be interveners show that they have a claim or defense that shares a common question of law or fact with the main action, and that their intervention will not unduly delay or prejudice the rights of the existing parties. These rules presuppose that the intervener has standing to bring an independent claim.

"Standing of a party to maintain a legal action is a 'threshold issue'" and a prerequisite to judicial relief. *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me. 1984). While the concept of standing may be somewhat amorphous, it generally requires that a party have an interest in a controversy "that is 'in fact distinct from the interest of the public at large.'" *Nergaard v. Town of Westport Island*, 2009 ME 56, ¶ 18, 973 A.2d 735, 740 (quoting *Ricci*, 485 A.2d at 647); *see Nichols v. Town of Rockland*, 324 A.2d 295, 296 (Me. 1974) (standing is an amorphous concept relating to presence of a justiciable controversy capable of specific, conclusive relief). The 171 TMF interveners have not attempted to assert any individualized interests in the beach area subject to this litigation. Rather, they claim that the Town owns the beach or alternatively that they have collectively acquired a public easement. These claims merely assert the public

5

interest in the beach, which is already being adequately represented by the Town of Kennebunkport and the State of Maine. *See Bell I,* 510 A.2d at 518 n.18, 519 (Town may assert rights of public to beach, and the Attorney General has the power and duty to protect public rights). The TMF interveners' pleadings fall short of showing the particularized injury or claim required to obtain standing.

The court grants the law firm of Taylor, McCormack, & Frame, LLC, permission to participate in discovery *de bene esse.* However, before any of the firm's clients is granted intervener status, that intervener must provide a factual basis showing an individualized claim and must satisfy the requirements of Rule 24. *See e.g. Bell v. Town of Wells,* YORSC-CV-84-125 (Me. Super. Ct., Yor. Cty., Sept. 14, 1987 (Brodrick, J.) (allowing participation by group of forty parties claiming private and personal easements by prescription based on their unique personal history of use).

Roger C. and Nancy H. Allen; Kendall and Linda Burford; and David Green and Jean French do not appear to have joined the TMF parties or sought representation from Taylor, McCormack, & Frame, LLC. Like the TMF interveners, however, they have failed to show any individualized interest in the beach necessary to acquire standing. The plaintiffs' motion to strike or dismiss these pleadings is granted.

**4.    Agnes McNamee and John and Sonia Dalton's Motions to Withdraw**

Agnes McNamee and John V. and Sonia M. Dalton request to withdraw their filings. Both Ms. McNamee and Mr. and Mrs. Dalton appear to have joined the TMF interveners since filing their original answers, defenses, and counterclaims. As their original pleadings do not assert any individualized claims and are identical in substance to the claims of the TMF group, the requests are granted. The plaintiffs' motion to strike their pleadings is thus moot and denied.

**5.    Plaintiffs' Motion to Dismiss the Defendant Town of Kennebunkport's Counterclaim Counts VI (Custom) and IX (Offset Taxes) Pursuant to Rule 12(b)(6); Motion to Strike Affirmative Defenses 9 (Custom), 12 (Abandonment), and 16 (Property Taxes), and a portion of the Town's prayer for relief pursuant to Rule 12(f); and Request for Rule 11 Sanctions**

Among the Town's counterclaims are its Count VI asserting that the Town or the public has acquired rights in the plaintiffs' property through the doctrine of custom, and its Count IX requesting that the court assess the plaintiffs for back-taxes in the event they are adjudged to hold title to the beach. The plaintiffs argue that the doctrine of easement by custom does not exist in Maine, and that the Superior Court has no authority to assess and impose property taxes. The plaintiffs object to the Town's affirmative defenses numbered 9 and 16 insofar as they rest on the same theories of custom and tax, respectively. The plaintiffs also object to the Town's affirmative defense number 12 on the grounds that the law of abandonment does not apply to fee ownership. Regarding the Town's requested relief, the plaintiffs contend that the Town has not properly pleaded the elements required for an action to quiet title and should thus receive no relief pursuant to 14 M.R.S. § 6651, and that the Town has likewise failed to establish any basis to request attorney's fees. Finally, the plaintiffs request that the Town be compelled to pay the legal fees and costs incurred in opposing its Count IX.

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465). "For purposes of a 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *McAfee*, 637 A.2d at 465.

7

"Dismissal is warranted when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that [s]he might prove in support of [her] claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46.

Where Rule 12(b) tests the sufficiency of the complaint, Rule 12(f) provides "the means for testing the legal sufficiency of a defense." 1 Field, McKusick & Wroth, *Maine Civil Practice* 255 (2d ed. 1970). Under Rule 12(f) "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." M.R. Civ. P. 12(f).

The Town of Kennebunkport has asserted that it holds an easement by custom in Count VI of its complaint and as part of its affirmative defense number 9. The plaintiffs contend that the doctrine does not exist in Maine. Old English common law allowed the public to obtain an easement over private property where the public usage occurred "so long as the memory of man runneth not to the contrary" without interruption; was reasonable, "peaceable and free from dispute;" occurred within a bounded area; the custom was obligatory; and it was not "repugnant to other customs or law." *Eaton v. Town of Wells*, YORSC-RE-97-203 at 13–14 (Me. Super. Ct., Yor. Cty., Oct. 25, 1999) (Kravchuk, C.J.) (quoting *State ex. Re. Thornton v. Hay*, 462 P.2d 677 (Ore. 1969)). A right by custom,

> unlike a prescriptive right, never was assumed to arise from a grant by the land owner of an easement in it, but to have come, if at all, from some governmental act of a public nature, the best evidence of which had perished, or of which there never had been, as in the case of a charter from some feudal lord or ecclesiastical corporation, a public record. "Custom" was an invention to surmount the incapacity of a fluctuating body, as the inhabitants of a manor or barony, to take by grant.

*Piper v. Voorhees*, 130 Me. 305, 311, 155. A. 556, 559 (1931).

In *Bell v. Town of Wells*, the trial court accepted that the Town could establish a public easement over the plaintiff beach-owners' land, but found that the Town had

failed to meet its burden of proof. *Bell II*, 557 A.2d at 179. On appeal, the Law Court affirmed the judgment but explicitly reserved the question of whether the doctrine is part of Maine's common law. *Id.* The Court noted that "[v]ery few American states recognize the English doctrine of public easements by local custom," and that there was "a serious question whether application of the local custom doctrine to conditions prevailing in Maine near the end of the 20th century is necessarily consistent with the desired stability and certainty of real estate titles." *Id.*

Both the Town and the plaintiffs cite *Bell* to support their positions on the doctrine of custom. The Town claims that *Bell* implicitly supports the doctrine's existence, while the plaintiffs argue that *Bell* implicitly bars the doctrine's application. In fact, the state of the law is ambiguous because the Law Court has neither adopted nor rejected the doctrine. *Id.; Piper*, 130 Me. at 311, 155. A. at 559. This court similarly declines to rule on the doctrine's viability at this early stage of the proceedings. The plaintiffs' motion to dismiss Count VI and strike defense 9 is denied, without prejudice to reconsideration as the facts are developed.

The Town's Count IX alleges that the plaintiffs have never paid taxes on the land in question, suggests this is a sign of their intent to abandon the property, and requests that the court order the plaintiffs to pay back taxes if they are found to hold title in the beach. The Town's affirmative defense 12 raises the issue of abandonment, and defense 16 states that the plaintiffs "have failed to pay property taxes on all or any portion of Goose Rocks Beach." The plaintiffs attack these claims and defenses as legally deficient and seek attorney's fees in connection with the tax question.

First, the plaintiffs correctly argue that the theory of abandonment is not relevant to this litigation. An easement may be extinguished through abandonment if a party shows "a history of nonuse coupled with an act or omission evincing a clear intent to

9

abandon" the right of way. *Canadian N. Ry. v. Sprague*, 609 A.2d 1175, 1179 (Me. 1992). However, "'a perfect legal title cannot be lost by abandonment.'" *Town of Sedgwick v. Butler*, 1998 ME 280, ¶ 6, 722 A.2d 357, 358 (quoting *Picken v. Richardson*, 146 Me. 29, 36, 77 A.2d 191, 194 (1950)). The plaintiffs in this case claim to have perfect title in the disputed beach and have not advanced any theory of easement. If they do in fact hold the fee interest, they could not abandon it. *Picken*, 146 Me. at 36, 77 A.2d at 194. The Town's affirmative defense number 12 is thus stricken as irrelevant, and Count IX dismissed insofar as it relates to abandonment.

Second, the plaintiffs are also correct that the question of property taxes is not properly before the court. To begin, the Town concedes that it has never assessed the plaintiffs or their predecessors in title for property taxes on the beach. The assessment and collection of property taxes is entrusted to the State Tax Assessor and the respective municipalities by statute. 36 M.R.S. §§ 501–65; 701–66. The legislature has similarly prescribed statutory processes for tax collection. 36 M.R.S. §§ 751–66, 891–1084. Even if the Town had assessed the plaintiffs on their beach property and the plaintiffs were delinquent, this in itself would have no bearing on their title to the property. The procedure for imposing and foreclosing a tax lien is codified in sections 552 and 941 through 948. The court rejects the Town's attempt to analogize unassessed taxes to damages and cannot impose extra-statutory taxation in the guise of damages. Affirmative defense 16 is stricken and Count IX dismissed in its entirety. The plaintiffs' request that Rule 11 sanctions be imposed on the Town for its taxation argument is denied.

Finally, the plaintiffs' motion to strike portions of the Town's requested relief is denied.

In summary, the plaintiffs' motion to dismiss Count VI (custom); to strike defense 9 (custom) and the requests for relief pursuant to 14 M.R.S. § 6651 and for attorney's fees; and the plaintiffs' request for Rule 11 sanctions is denied. The plaintiffs' motion to dismiss Count IX (property taxes) and to strike defenses 12 (abandonment) and 16 (property taxes) is granted.

**6.    Plaintiffs' Motion to Dismiss the Defendants Alexander M. and Judith A. Lachiatto's Counterclaim Counts III (Acquiescence), V (Dedication and Acceptance), VI (Custom), VII (Easement), and VIII (Implied/Quasi Easement) Pursuant to Rule 12(b)(6); Motion to Strike Affirmative Defenses 2 (Standing), 7 (Public Trust), 9 (Custom), 15 (Consideration), and 16 (Property Taxes), and a portion of the Lachiattos' prayer for relief pursuant to Rule 12(f)**

Defendants Alexander M. and Judith A. Lachiatto are interveners who own a back-lot property near Goose Rocks Beach in Kennebunkport, Maine. They have agreed to withdraw Counts III, V, and VI of their counterclaim, affirmative defenses 2, 15, and 16, and their request for relief pursuant to 14 M.R.S. § 6651. They maintain, however, Counts VII for easement and VIII for implied easement, their defenses asserting the public trust doctrine and easement by custom, and their right to seek attorney's fees later in the proceedings.

The doctrine of easement by custom was addressed above. The Lachiattos' defense number 9 is identical to the Town's, and the plaintiffs' motion to strike it is denied. The same is true of their request for attorney's fees and costs. The Lachiattos' Count VII merely recites the theories of easement by prescription, implication, and the public trust doctrine, which are already raised by their Counts IV, VIII, and defense 7 respectively. Count VII is thus dismissed as being duplicative or unduly repetitive.

Count VIII asserts that an easement for local residents and/or the public was created through implication by a prior quasi-easement. An easement can be created in this way if:

> (1) the property when in single ownership [was] openly used in a manner constituting a "quasi-easement," as existing conditions on the retained land that are apparent and observable and the retention of which would clearly benefit the land conveyed; (2) the common grantor, who severed unity of title, . . . manifested an intent that the quasi-easement should continue as a true easement, to burden the retained land and to benefit the conveyed land; and (3) the owners of the conveyed land . . . continued to use what had been a quasi-easement as a true easement.

*Northland Realty, LLC v. Crawford*, 2008 ME 92, ¶ 13, 953 A.2d 359, 364 (quoting *Robinson v. Me. Cent. R.R. Co.*, 623 A.2d 626, 627 (Me. 1993)) (alterations and omissions in original). The same test can be applied to determine if an easement burdening the conveyed land was created. *Connolly v. Me. Cent. R.R. Co.*, 2009 ME 43, ¶ 8 n.1, 969 A.2d 919, 922 n.1.

The Lachiattos allege that the "[p]laintiffs' predecessors in title are the common grantors of lots in the vicinity of Goose Rocks Beach and Goose Rocks Beach itself," and that "[t]he circumstances at the time of conveyance of the lots located adjacent to, and in the vicinity of, Goose Rocks Beach imply the intent of the [p]laintiffs' predecessors in title to subject . . . Goose Rocks Beach" to an easement favoring the Town, the public, or the defendants." Under Maine's rules of notice pleading, the Lachiattos have broadly alleged circumstances that, developed through discovery, could show that a common grantor marketed and conveyed the plaintiffs' properties in a way that created a quasi-easement in the Lachiattos' favor. The plaintiffs' motion to dismiss Count VIII is denied.

The Lachiattos' affirmative defense number 7 asserts that the public trust doctrine bars the plaintiffs' claims to the extent that the doctrine includes the public right to use the beach for general recreational purposes. The issues raised by this case clearly implicate the public trust doctrine, and the court will not bar discussion of the doctrine at this early phase of litigation. The plaintiffs' motion to strike affirmative defense 7 is denied.

To summarize, the Lachiattos have withdrawn Counts III (acquiescence), V (dedication and acceptance), and VI (custom), affirmative defenses 2 (standing), 15 (consideration), and 16 (property taxes), and their request for relief pursuant to the quiet title statute. The plaintiffs' motion to dismiss Count VIII (implied easement) and strike defense 9 (custom), defense 7 (public trust), and the request for attorney's fees is denied. The motion to dismiss Count VII (easement) is granted.

**7. Plaintiffs' Motion to Dismiss Defendants Richard J. and Margarete K.M. Driver's Counterclaim Count I (Fee Simple) Pursuant to Rule 12(b)(6); Motion to Strike Affirmative Defenses 2 (Standing), 7 (Public Trust), 9 (Custom), 15 (Consideration), and 16 (Property Taxes), and a portion of the Drivers' prayer for relief pursuant to Rule 12(f)**

Defendants Richard J. and Margarete K.M. Driver are interveners who own back-lot property in the Goose Rocks Beach area of Kennebunkport, Maine. Count I of their counterclaim asserts that the "[f]ee simple title to Goose Rocks Beach has resided in Defendants Town of Kennebunkport, and/or the public, continuously for over 100 years" and seeks a declaration affirming the Town's ownership. The plaintiffs correctly argue that the Drivers do not have standing to assert the Town's interest.

As discussed above, a party may only litigate personal interests that are distinct from the interest of the public at large. *Ricci*, 485 A.2d at 647. In Count I of their counterclaim, the Drivers attempt to litigate the interests of the Town of Kennebunkport and the general public. While they do allege that the "[d]efendants, and/or the public, have acquired fee simple title . . . by prescription," the referenced "defendants" appear to be the "Defendants Town of Kennebunkport, and/or the public." The Drivers themselves interpret their complaint this way and explain that "Count I is plead to encompass our rights as members of the general public." The Town is already a party to this litigation and will adequately represent its interest. Both the Town and the State

13

will represent the public at large. The Drivers, as individuals, may not separately litigate these broad civic interests and their Count I is dismissed.

The plaintiffs also seek to strike a number of the Drivers' affirmative defenses. "An affirmative defense is one 'raising new facts or arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'" *Estate of Cilley v. Lane*, 2009 ME 133, ¶ 13, 985 A.2d 481, 486 (quoting Black's Law Dictionary 430 (7th ed. 1999)). The Drivers have agreed to withdraw defense 15. Defense number 2 asserts that the plaintiffs lack title to the beach and therefore lack standing to assert their claims. This is a denial of the plaintiffs' claims rather than an affirmative defense because its merit rests on disproving the allegations in the plaintiffs' complaint. It effectively duplicates the Drivers' answer, and the plaintiffs' motion to strike it is granted.

The Drivers' affirmative defense number 7 is identical to the Lachiattos' defense number 7 and contends that the plaintiffs' claims are barred to the extent the public trust doctrine reserves a public right to use the beach for general recreation. The plaintiffs' motion to strike defense 7 is denied.

Affirmative defenses 9 and 16 concern the doctrine of custom and property taxes, respectively. These issues have already been discussed. The motion to strike is denied on defense 9, but granted on defense 16. Finally, the motion to strike the request for attorney's fees is denied.

In summary, the Drivers' have withdrawn defense 15 (consideration). The motion to strike defense 7 (public trust), defense 9 (custom), and the Drivers' request for attorney's fees is denied. The motion to dismiss Count I (fee simple) and strike defenses 2 (standing) and 16 (property taxes) is granted.

8.    Plaintiffs' Motion to Dismiss Defendants Sharon Ann Eon-Harris and John Michie Harris's Counts III (Acquiescence), V (Dedication and Acceptance), VI (Custom), VII (Easement), VIII (Implied Easement), X (Harassment), XI (Interference with Economic Advantage), and XII (Loss of Property Value) Pursuant to Rule 12(b)(6); Motion to Strike Affirmative Defenses 2 (Standing), 7 (Public Trust), 9 (Custom), 15 (Consideration) and 16 (Property Taxes), and a Portion of the Harrises' prayer for relief pursuant to Rule 12(f); and Request for Rule 11 Sanctions

Defendants Sharon Ann Eon-Harris and John Michie Harris are interveners who own back-lot property in the Goose Rocks Beach area. Count III of their counterclaim asserts an interest in the beach through the plaintiffs' acquiescence. Title can be obtained through acquiescence if a party can show by clear and convincing evidence:

> (1) possession up to a visible line marked clearly by monuments, fences or the like; (2) actual or constructive notice of the possession to the adjoining landowner; (3) conduct by the adjoining landowner from which recognition and acquiescence, not induced by fraud or mistake, may be fairly inferred; and (4) acquiescence for a long period of years, such that the policy behind the doctrine of acquiescence—that a boundary consented to and accepted by the parties for a long period of years should become permanent—is well served by recognizing the boundary.

*Hamlin v. Niedner*, 2008 ME 130, ¶ 7, 955 A.2d 251, 254. The plaintiffs object that while the Harrises have pleaded the general elements of acquiescence, they have not alleged any specific facts entitling them to their requested relief.

Each claim in a pleading must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." M.R. Civ. P. 8(a). "Where a Maine Rule of Civil Procedure is identical to the comparable federal rule, '[the courts] value constructions and comments on the federal rule *as aids* in construing our parallel provision.'" *Bean v. Cummings*, 2008 ME 18, ¶ 11, 939 A.2d 676, 680 (quoting *Me. Cent. R.R. Co. v. Bangor & Aroostook R.R. Co.*, 395 A.2d 1107, 1114 (Me. 1978)) (emphasis added in *Bean*). Rule 8(a) is "practically identical to the comparable federal rule[]." *Id.*

Pleadings do not need to allege specific facts to survive a 12(b)(6) motion to dismiss unless required to do so by Rule 9(b). However, the United States Supreme

15

Court recently instructed that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted).

The Harrises' counterclaim recites the elements of a claim of title by acquiescence, but does not allege any facts to satisfy those elements. At minimum, they have failed to indicate what visible line delineates the area they have possessed or by what conduct the plaintiffs indicated their acquiescence to the Harrises' occupation. Without this information the plaintiffs do not have notice of the Harrises' grounds for recovery and are hampered in their ability to prepare a defense. *See Twombly*, 550 U.S. at 555. The Harrises' Count III is dismissed.

Count V of the Harrises' counterclaim asserts that the plaintiffs have dedicated their beach property to the public and that the dedication has been accepted. Dedication and acceptance is one way for the public at large to acquire an easement or right of way over private property. *Manchester v. Augusta Country Club*, 477 A.2d 1124, 1128–29 (Me. 1984). "To prove dedication, two conditions must be shown: that the land in question was 'dedicated' by the grantor for a public purpose; and that the public 'accepted' the dedication by some affirmative act." *Id.* at 1129. While the Town of Kennebunkport or the State of Maine clearly have standing to raise this claim as the public's representative, it is far less clear that the Harrises are similarly situated. They are private citizens who lack standing to litigate claims on behalf of the general public. As such, Count V is dismissed.

The Harrises' Counts VI for custom, VII for easement, and VIII for implied easement are identical to those claims brought by the Town and the Lachiattos. These

16

are addressed above. The motion to dismiss Counts VI and VIII is denied, but the motion to dismiss Count VII is granted. Counts X through XII are unique to the Harrises. Count X asserts a claim for harassment stemming from an incident in which one or more of the plaintiffs allegedly reported the Harrises to the police for trespassing over the beach area. The plaintiffs correctly point out that there is no general common law cause of action for harassment in Maine. The Harrises have not pleaded any facts showing entitlement to protection or recovery under Maine's Protection from Harassment statute, and in any event such actions must be brought in District Court. 5 M.R.S. §§ 4651–52. Count X is dismissed.

Count XI alleges that the plaintiffs have tortiously interfered with an economic advantage. The apparent basis for this is the harassment identified in Count X, which has allegedly damaged the Harrises' relationship with their tenants and decreased the value of their rental property. "Tortious interference with a prospective economic advantage requires a plaintiff to prove: (1) that a valid contract or prospective economic advantage existed; (2) that the defendant interfered with that contract or advantage through fraud or intimidation; and (3) that such interference proximately caused damages." *Rutland v. Mullen*, 2002 ME 98, ¶ 13, 798 A.2d 1104, 1110. The Harrises' have not sufficiently pleaded fraud, so their case must rest on intimidation.

"Interference by intimidation involves unlawful coercion or extortion. . . . [A] person who claims to have, or threatens to lawfully protect, a property right that the person believes exists cannot be said to have intended to deceive or to have unlawfully coerced or extorted another simply because that right is later proven invalid." *Id.* at ¶ 16, 798 A.2d at 1111. Read generously, the Harrises' complaint alleges that the plaintiffs contacted the police and wrongfully accused the Harrises or their tenants of trespassing. The Harrises do not allege that the plaintiffs did so in bad faith, only that it

17

was wrongful. If the allegations are true they still fall short of showing the fraud or intimidation necessary to support a claim of tortious interference and the Harrises' Count XI is dismissed.

The Harrises Count XII asserts a claim for the loss of property value allegedly resulting from the plaintiffs' actions. While lost value may be an element of damages, there is no independent tort claim for diminished property value caused by another's lawful assertion of a property right. Count XII is dismissed. The plaintiffs' request for Rule 11 attorney's fees and costs in relation to Counts XI and XII is denied.

The plaintiffs' motion to strike affirmative defenses 2 (standing), 7 (public trust), 9 (custom), and 16 (property taxes), has been discussed above and the same considerations apply to the Harrises as to the other defendants. The motion to strike is denied on defenses 7 and 9, but granted on defenses 2 and 16. The same is true of their requests for relief pursuant to the quiet title statute and for attorney's fees and costs, and the motion to strike these requests is denied. Affirmative defense number 15 asserts that the plaintiffs' claims are barred by lack of consideration. The only relevance this theory could have to this litigation would be to show that the plaintiffs do not actually hold title to the contested beach, and therefore it is not an affirmative defense. *Estate of Cilley*, 2009 ME 133, ¶ 13, 985 A.2d at 486 (affirmative defense defeats claim even if plaintiffs' allegations are true). The plaintiffs' motion to strike defense 15 is granted.

To summarize, the court denies the motion to dismiss Count VI (custom) and Count VIII (implied easement); denies the motion to strike defense 7 (public trust), defense 9 (custom), and the Harrises' requested relief; and denies the plaintiffs' request for Rule 11 sanctions. The court grants the motion to dismiss the Harrises' Counts III (acquiescence), V (dedication and acceptance), VII (easement), X (harassment), XI

18

(tortious interference), and XII (loss of property value); and grants the motion to strike defenses 2 (standing), 15 (consideration), and 16 (property taxes).

**The entries are:**

- The court retains the Town of Kennebunkport's objection to notice and service under advisement.

- The State of Maine's motion to intervene is granted.

- The TMF interveners' motion to intervene is denied. Their attorneys, Taylor, McCormack, & Frame, LLC, are granted standing to participate in discovery *de bene esse*. Individual interveners may request to join this litigation pursuant to Rule 24 if they can show a factual basis for an individualized claim.

- The plaintiffs' motion to strike the responsive documents of Roger C. and Nancy H. Allen; Kendall and Linda Burford; and David Green and Jean French is granted.

- Mark W. Smith's motion to substitute counsel is granted.

- Agnes McNamee and John and Sonia Dalton's motions to withdraw their individual court filings are granted.

- The plaintiffs' motion to strike the responsive documents of Mark W. Smith; Agnes McNamee; and John and Sonia Dalton is denied.

- The plaintiffs' motion to dismiss the defendant Town of Kennebunkport's Counterclaim Count IX and to strike affirmative defenses 12 and 16 is granted. The motion is otherwise denied.

- Defendants Alexander M. and Judith A. Lachiatto voluntarily withdraw their Counterclaim Counts III, V, and VI; and their affirmative defenses 2, 15, and 16; and their request for relief pursuant to the quiet title statute. The plaintiffs' motion to dismiss their Counterclaim Count VII is granted, and the motion is

19

otherwise denied.

- Defendants Richard J. and Margarete K.M. Driver voluntarily withdraw their affirmative defense 15. The plaintiffs' motion to dismiss their Counterclaim Count I and to strike their defenses 2 and 16 is granted. The motion is otherwise denied.

- The plaintiffs' motion to dismiss defendants Sharon Ann Eon-Harris and John Michie Harris's Counterclaim Counts III, V, VII, X, XI, and XII; and to strike their affirmative defenses 2, 15, and 16 is granted. The motion is otherwise denied.

DATE: 8/17/10

G. Arthur Brennan
Justice, Superior Court

PLEASE REFERENCE ATTACHED LIST OF ATTORNEYS FOR THIS CASE.

## PLAINTIFFS ATTORNEYS

Sidney Thaxter, Esq.
Regan Haines, Esq.
David Silk, Esq.
CURTIS THAXTER STEVENS BRODER & MICOLEAU
One Canal Plaza
PO Box 7320
Portland, ME   04112

Christopher Pazar, Esq.
DRUMMOND & DRUMMOND
One Monument Way
Portland, ME   04101


## DEFENDANTS ATTORNEYS

Brian D. Willing, Esq.
Amy Tchao, Esq.
Melissa Hewey, Esq.
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way, Suite 600
Portland, ME   04101

Neal Weinstein, Esq.
LAW OFFICES OF NEAL WEINSTEIN
32 Saco Ave.
PO Box 660
Old Orchard Beach, ME   04064

Thomas R. McNaboe, Esq.
LAW OFFICE OF THOMAS R MCNABOE
13 Sea Cove Road
Cumberland, ME   04110

Gregg R. Frame, Esq.
Andre Duchette, Esq.
TAYLOR MCCORMACK & FRAME LLC
4 Milk St., Suite 103
Portland, ME   04101

STATE OF MAINE                              SUPERIOR COURT
YORK, ss.                                   CIVIL ACTION
                                            DOCKET NO: RE-09-111


ROBERT F. ALMEDER and VIRGINIA
S. ALMEDER, et al.,

                  Plaintiffs,

        v.


TOWN OF KENNEBUNKPORT,
ALL PERSONS WHO ARE
UNASCERTAINED, not in being,                    **ORDER FOR SERVICE**
unknown or out of the State, heirs or        **OF PROCESS AND SERVICE**
legal representatives of such                     **BY PUBLICATION**
unascertained persons, or such persons
as shall become heirs, devisees or
appointees of such unascertained
persons who claim the right to use or        **(Title to Real Estate Involved)**
title in Plaintiffs' Property other than
persons claiming ownership or
easement by, through, or under an
instrument recorded in the York
County Registry of Deeds, et al.

                  Defendants


        The plaintiffs own beachfront properties on Goose Rocks Beach in

the Town of Kennebunkport. They have brought this action to obtain a

declaration that they own fee titles in the beach to the low-water mark and

may exclude the public from their land, and to obtain judgment quieting

their titles. The Town of Kennebunkport, on behalf of the general public,

opposes the plaintiffs and is asserting counterclaims to establish the

general public's right to use Goose Rocks Beach for recreational purposes.

The State of Maine has joined the Town of Kennebunkport on behalf of the

1

public, and the following parties have intervened to claim private rights to the beach: Sharon & John Michie Harris; Alexander & Judith Lachiatto; and Richard & Margarete K.M. Driver. Many other individuals, corporations, and trusts are also seeking to intervene in the proceeding.

On July 21, 2010, the court heard argument on the defendant Town of Kennebunkport's objection to the method and adequacy of the plaintiffs' service of process. "Service of process serves the dual purposes of giving adequate notice of the pendency of an action, and providing the court with personal jurisdiction over the party properly served. . . . 'Any judgment by a court lacking personal jurisdiction over a party is void.'" *Gaeth v. Deacon*, 2009 ME 9, ¶ 20, 964 A.2d 621, 626 (quoting *Brown v. Thaler*, 2005 ME 75, P 10, 880 A.2d 1113, 1116). After due consideration the court orders:

1.     Service by Publication

The court finds that service in person or by mail cannot practicably be made upon all persons who are unascertained, not in being, unknown or out of the State, heirs or legal representatives of such unascertained persons, or such persons as shall become heirs, devisees or appointees of such unascertained persons who claim the right to use or title in Plaintiffs' Property other than persons claiming ownership or easement by, through, or under an instrument recorded in the York County Registry of Deeds. To serve, notify, and bind these persons, including persons owning non-beachfront property in the so-called "Goose Rocks Zone" of the Town of Kennebunkport, the court orders service to be made by publication as prescribed by Maine Rule of Civil Procedure 4(g). The plaintiffs shall publish in the Portland Press Herald the legal notice attached to

2

and incorporated into this order as Exhibit A. This notice shall be published once a week for three consecutive weeks, with the first publication occurring within twenty days after the date of this order. Service by publication shall be complete on the twenty-first day after the first publication. The plaintiffs shall file with the court an affidavit that publication has been made. This publication shall be the responsibility of and at the expense of the plaintiffs.

2.      Personal Service

The law requires that any person subject to service of process be joined as a party to an action if that person claims an interest relating to the subject matter of the action and if their absence may leave any existing parties subject to a substantial risk of incurring inconsistent obligations. Property rights pertaining to Goose Rocks Beach's intertidal zone are in dispute. Approximately sixty-five owners of beachfront properties on Goose Rocks Beach are not parties to this litigation and will not necessarily be bound by its outcome. If the plaintiffs succeed in quieting their titles in the beach, the non-party owners' titles will remain open to challenge. Conversely, if the Town of Kennebunkport succeeds in establishing the public's right to use the intertidal zone of the plaintiffs' property for recreational purposes, the non-party owners' could attempt to exclude the public from their own land in the future. Either result creates a checkerboard of uncertainty regarding the public and the Town of Kennebunkport's rights to use Goose Rocks Beach.

To ensure that complete relief may be accorded to all the named parties in this case and to avoid the risk of duplicative future litigation, the court orders the plaintiffs and the Town of Kennebunkport to jointly serve process on each owner of beachfront property on Goose Rocks Beach not already named as a party in

3

conformity with Maine Rule of Civil Procedure 4(c)(1). Per the rule and within twenty days after the date of this order, the plaintiffs and the Town of Kennebunkport shall jointly mail a copy of the summons, the complaint, and the Town of Kennebunkport's counterclaim (by first-class mail, postage prepaid) to each person to be served, together with two copies of a notice and acknowledgment form and a return envelope, postage prepaid, addressed to the sender. If no acknowledgement of service is received within twenty days after the date of mailing, personal service shall be made in accordance with the Rule. Any owner of beachfront property on Goose Rocks Beach who does not wish to join as a plaintiff shall be joined as a defendant. The plaintiffs and the Town of Kennebunkport shall each bear one-half the cost of service.

Nothing in this order should be read to prohibit any party from taking additional, independent measures to notify potential litigants of these proceedings.

DATE: 8/30/10

G. Arthur Brennan
Justice, Superior Court

# EXHIBIT A

## NOTICE TO PERSONS WHO ARE UNASCERTAINED
## AND TO THE GENERAL PUBLIC
## 14 M.R.S. § 6653

PURSUANT to 14 M.R.S. §§ 6653–6654, and by order of the York County Superior Court, PLEASE TAKE NOTE that on October 26, 2009, a complaint was filed in the Office of the Clerk of the York County Superior Court, Alfred, Maine, Docket No. ALFSC-RE-2009-00111, titled: *Robert F. Almeder et al. v. Town of Kennebunkport.*

The plaintiffs in this lawsuit are as follows: Robert F. Almeder and Virginia S. Almeder, Trustees of the Almeder Living Trust, 113 Kings Highway, York County Registry of deeds ("YCROD") Book 15659, Page 864; Christopher Asplundh, 17 Sandpoint Road, YCROD Book 1979, Page 551; John T. Coughlin and Priscilla M. Coughlin, Trustees of P.M.C. Realty Trust, 115 Kings Highway, YCROD Book 3085, Page 5; Louise S. De Mallie, as Trustee of the Louise S. De Mallie Revocable Trust u/a dated November 12, 2002, 287 Kings Highway, YCROD book 12173, Page 221 and Book 14675, Page 862; Willard Parker Dwelley, Jr. and W. Parker Dwelley, III and John H. Dwelley, Co-Trustees of the Joan H. Dwelley Testamentary Trust, 23 Sandpoint Road, YCROD Book 12248, Page 9 and Book 15577, Page 679; Janice M. Fleming, 227 Kings Highway, YCROD Book 13696, Page 59; John O. Gallant and Sharon A. Gallant, 219 Kings Highway, YCROD Book 8413, Page 198; Jule C. Gerrish, 173 Kings Highway, YCROD Book 1819, Page 32; Eugene R. Gray, Trustee of the Qualified Personal Residence Trust, 183 Kings Highway, YCROD Book 14656, Page 916; Edwina D. Hastings, Trustee of the Edwina D. Hastings Revocable Trust, 221 Kings Highway, YCROD Book 14999, Page 766; Leslie A Josselyn-Rose, Trustee of the LAJR Trust, 251 Kings Highway, YCROD Book 15587, Page 491; Deborah J. Kinney, 223 Kings Highway, YCROD Book 9721, Page 278; Terrence G. O'Connor and Joan M. Leahey, 195 Kings Highway, YCROD Book 13253, Page 87; Kristen B. Raines, 249 Kings Highway, YCROD Book 14147, Page 614; Linda M. Rice, 193 Kings Highway, YCROD Book 7955, Page 127; Michael J. Sandifer and Alice B. Sandifer, Co-Trustees of the Alice B. Sandifer Trust, 253 Kings Highway, YCROD Book 14627, Page 144; Eleanor A. Scribner and Robert H. Scribner, Trustees of the Eleanor A. Scribner Qualified Personal Residence Trust, 291 Kings Highway, YCROD Book 14225, Page 139; Carolyn K. Sherman, 109 Kings Highway, YCROD Book 9721, Page 281; Steven H. Wilson and Shawn B. McCarthy, Trustees of the Twombly Family Trust u/d/t dated January 24, 2002, as amended, 165 Kings Highway, YCROD Book 15516, Page 1121; Richard M. Vandervoorn, Lawrence W. Vandervoorn and Robert O. Clemens, Trustees of The Cornelius J. Vandervoorn Qualified Personal Residence Trust, 177 Kings Highway, YCROD Book 15718, Page 584; and Beth G. Zagoren, 215 Kings Highway, YCROD Book 5931, Pages 340.

The present defendants in this lawsuit are: the Town of Kennebunkport; the State of Maine; Alexander M. Lachiatto and Judith A. Lachiatto; John Michie Harris and Sharon Eon-Harris; Richard J. Driver and Margarete K.M. Driver; and

5

all persons who are unascertained, not in being, unknown or out of the State, heirs or legal representatives of such unascertained persons, or such persons as shall become heirs, devisees or appointees of such unascertained persons who claim the right to use or title in the plaintiffs' property other than persons claiming ownership or easement by, through, or under an instrument recorded in the York County Registry of Deeds.

The Town of Kennebunkport, the Lachiattos, the Drivers, and the Harrises have asserted counterclaims claiming ownership of Goose Rocks Beach, the general public's right to the use of Goose Rocks Beach for any general recreation purpose, and individual private rights to the use of Goose Rocks Beach.

The plaintiffs complaint seeks a declaratory judgment under 14 M.R.S. §§ 5951–5963 and to quiet title pursuant to 14 M.R.S. §§ 6651–6653 in order to remove any cloud of apprehension over plaintiffs' title to their respective properties, including intertidal and upland property situated at Goose Rocks Beach, Town of Kennebunkport, York County, State of Maine.

### IMPORTANT WARNING

IF YOU WISH TO OPPOSE the claims of the plaintiffs, you or your attorney MUST PREPARE AND DELIVER A WRITTEN ANSWER to the complaint or counterclaim WITHIN 41 DAYS from the date of first publication. An answer must be delivered in person or by mail to Diane Hill, Clerk of Courts, York County Superior Court, 45 Kennebunk Road, P.O. Box 160, Alfred, Maine 04002-0160. On or before the day the answer is delivered to the Clerk of Courts, a copy of your answer must be mailed to the plaintiffs' attorney, Sidney St. F. Thaxter, Esq., Curtis Thaxter, LLC, One Canal Plaza, Suite 1000, P.O. Box 7320, Portland, Maine, 04112-7320. IF YOU INTEND TO OPPOSE THIS LAWSUIT, YOU MUST ANSWER WITHIN THE REQUIRED TIME. FAILURE TO DO SO WILL RESULT IN THE FORFEITURE OF YOUR CLAIMS. Failure to answer will not affect the public's rights.

## PLAINTIFFS ATTORNEYS

Sidney Thaxter, Esq.
Regan Haines, Esq.
David Silk, Esq.
CURTIS THAXTER STEVENS BRODER & MICOLEAU
One Canal Plaza
PO Box 7320
Portland, ME   04112

Christopher Pazar, Esq.
DRUMMOND & DRUMMOND
One Monument Way
Portland, ME   04101

## DEFENDANTS ATTORNEYS

Brian D. Willing, Esq.
Amy Tchao, Esq.
Melissa Hewey, Esq.
DRUMMOND WOODSUM & MACMAHON
84 Marginal Way, Suite 600
Portland, ME   04101

Neal Weinstein, Esq.
LAW OFFICES OF NEAL WEINSTEIN
32 Saco Ave.
PO Box 660
Old Orchard Beach, ME   04064

Thomas R. McNaboe, Esq.
LAW OFFICE OF THOMAS R MCNABOE
13 Sea Cove Road
Cumberland, ME   04110

Gregg R. Frame, Esq.
Andre Duchette, Esq.
TAYLOR MCCORMACK & FRAME LLC
4 Milk St., Suite 103
Portland, ME   04101

STATE OF MAINE                                    SUPERIOR COURT
                                                    CIVIL ACTION
YORK, ss.                                    DOCKET NO. RE-09-111
                                             GAB -YOR- 12/22/201|


ROBERT F. ALMEDER, et al.,

               Plaintiffs


        v.                                           ORDER


TOWN OF KENNEBUNKPORT and
ALL PERSONS WHO ARE
UNASCERTAINED,

               Defendants


## DECISION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Pending are seven motions for summary judgment. Oral argument was held on November 18, 2011. The Town of Kennebunkport, the plaintiffs, the State, and the TMF Group were all represented by counsel. The Lachiatto and Driver defendants represented themselves. Also, there are two outstanding motions regarding the summary judgment filings.

## BACKGROUND

On October 26, 2009, the plaintiffs, a group of beach-front land owners in Kennebunkport ("Plaintiffs"), brought a quiet title and declaratory judgment action against the Town of Kennebunkport and all persons unascertained who may have a claim to the high dry sand and intertidal zone of Goose Rocks Beach that is claimed by the Plaintiffs.

The procedural history of this case is extensive and complicated. Therefore, only a brief outline of that history related to the motions for summary judgment is provided here.

Turning first to the motions for summary judgment seeking judgment for fee title to the beach, the procedural history is as follows. The Defendant Town of Kennebunkport ("Town") filed its Motion for Summary Judgment ("Town MSJ") along with supporting documents on March 21, 2011. This motion seeks summary judgment against the relief requested in Counts I and II of the Plaintiffs' Complaint (declaratory judgment and quiet title to Goose Rocks Beach) and granting the relief requested in Count I of the Town's Counterclaim (fee simple ownership of Goose Rocks Beach).

On April 6, 2011, Paul and Sharon Hayes filed a memorandum opposing the Town's motion and joining the Plaintiffs reasoning.[1] On April 29, 2011, the Plaintiffs filed a "Joint Memorandum of Law in Opposition to Defendant Town of Kennebunkport's Motion for Summary Judgment" ("Joint Opp.") and a "Joint Opposition to Defendant Town of Kennebunkport's Statement of Undisputed Material Facts" ("Joint OSMF"). In support of this Joint Opposition, the Plaintiffs also submitted "Plaintiffs' Joint Statement of Material Facts" with exhibits tabbed as 1-6 ("Joint SMF"). The Plaintiffs also filed the "Plaintiffs' Motion for Partial Summary Judgment" ("Pls. MPSJ") seeking the relief requested in Counts I and II of their Complaint (only as to fee simple title) against the Town and any other defendant to be ascertained and "Plaintiffs' Motion for Summary Judgment" ("O'Connor/Leahey/Fleming MSJ") seeking judgment in their favor on Count I of the Town's Counterclaim. These motions are also

---

[1]    Paul and Sharon Hayes refer to themselves as third party defendants. However, the Town has treated them as plaintiffs because they have adopted the allegations of the Plaintiffs' complaint. *See* Town MSJ 2, n.1.

2

supported by the "Plaintiffs' Joint Statement of Material Facts" with exhibits tabbed as 1-6.

On June 10, 2011, the group of intervenors *de benne esse*, known as the TMF Group, filed a "Reply to Plaintiffs' Motion for Partial Summary Judgment with Incorporated Memorandum of Law" ("TMF Group MSJ") and "TMF Defendant's Opposition to Plaintiffs' Statements of Material Fact" ("TMF SMF"). The Plaintiffs subsequently filed a Motion to Strike the TMF Group's Reply ("Pls. Mot. Strike") and also filed a response to the TMF Group's "Statements of Additional Fact" ("Pls. TMF OSMF"). The TMF Group then filed a reply to the motion to strike ("TMF Group Reply").

On June 14, 2011, the Town filed a "Consolidated Memorandum of Law" ("Consol. Mem.") in opposition to the Plaintiffs' motions for summary judgment and in reply to the Plaintiffs' Opposition to the Town's Motion for Summary Judgment, accompanied by a reply to the Plaintiffs' Joint Statement of Undisputed Material Fact ("Town OSMF"). On June 14, 2011, the State of Maine opposed the Plaintiffs' Motion for Partial Summary Judgment by adopting the position of the Town. The Plaintiffs filed a reply to the Town's opposition on June 30, 2011 ("Pls. Reply").

Turning next to the claims of the TMF Group and other individual back-lot owners, the procedural history is as follows. On June 10, 2011, the Plaintiffs filed "Plaintiffs' Motion for Partial Summary Judgment Against Lachiatto, Driver, Harris, and TMF Group" on all remaining counts in each of these parties' counterclaims. The Plaintiffs also filed Statements of Material Fact ("Pls. TMF SMF") and a Memorandum of Law ("Pls. TMF MSJ"). The TMF Group responded with an Opposing Statement of Material Facts on July 11, 2011 ("TMF Group SMF") and a Memorandum of law ("TMF Group Mem.") on July 18, 2011. Also, on July 11, 2011, the Lachiatto and Driver

3

Defendants filed a Response and Cross-Motion for Summary Judgment and Memorandum of Law in support ("L/D MSJ"), and Statement of Material Facts. The Plaintiffs filed an opposition to the Lachiatto/Driver Statement of Material Facts and Memorandum in Opposition on July 19, 2011. On July 29, 2011, the Plaintiffs responded to the TMF Group's opposition ("Pls. TMF Reply"). And finally, on August 9, 2011, the Lachiatto/Driver Defendants submitted a Supplemental Statement of Material Facts with record citations ("L/D Supp. SMF") along with a Motion for Enlargement of Time for filing these statements of fact.

The State of Maine, as intervenor, filed a Motion for Summary Judgment and Memorandum of Law on May 4, 2011, requesting a ruling that general recreational activity in the intertidal zone, not incidental or related to fishing, fowling, or navigation, is permitted under the Maine public trust doctrine, the decision in *Bell v. Town of Wells*, 557 A.2d 168 (Me. 1989), notwithstanding. The Plaintiffs filed an opposing Memorandum of Law on May 13, 2011. On May 16, 2011, the Surfrider Foundation filed a Motion for Summary Judgment joining the arguments of the State of Maine which was opposed by the Plaintiffs on May 19, 2011. The State filed a Reply on May 25, 2011. The State has since filed a supplement to its Memorandum and the Plaintiffs have replied.

## DISCUSSION

### I.  Summary Judgment Standard

Granting summary judgment is proper if there is no genuine issue of material fact in dispute and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). "A material fact is one that could potentially affect the outcome of the suit." *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504. "A genuine issue exists when sufficient evidence supports a factual contest to

require a factfinder to choose between competing versions of the truth at trial." *Baillargeon v. Estate of Dolores A. Daigle*, 2010 ME 127, ¶ 12, 8 A.3d 709. The court should consider the facts in the light most favorable to the non-moving party and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *See e.g., Johnson v. McNeil*, 2002 ME 99, ¶ 8, 800 A.2d 702.

## II. Town of Kennebunkport's Motion for Summary Judgment on Count I of its Counterclaim.

The Town's Motion for Summary Judgment seeks judgment that the Town is the fee simple owner of the high dry sand and intertidal zone of Goose Rocks Beach. The argument is based on the legal significance of a document executed in 1684 by Thomas Danforth, then governor of the Province of Maine. (Town SMF ¶ 2.) The Town argues that this document conveyed from Massachusetts to the Town all of the common and undivided land within the boundaries of the Town. This land had been acquired by Massachusetts through its purchase of the previously un-granted lands within Maine from Ferdinando Gorges, and included the claimed areas of Goose Rocks Beach. (Town SMF ¶ 2.) The Town argues that after acquiring Goose Rocks Beach through this conveyance, it never subsequently conveyed any part of the beach into private hands. (Town SMF ¶¶ 36-98.)

The interpretation of a deed is a question of law. *Bennett v. Tracy*, 1999 ME 165, ¶ 7, 740 A.2d 571. When construing a deed the courts "are to give effect, if possible, to the intention of the parties, so far as it can be ascertained in accordance with legal canons of interpretation... [and] are to consider all the words of the grant in the light of the circumstances and conditions attending the transaction." *McLellan v. McFadden*, 95 A. 1025, 1028 (Me. 1915). The court must first attempt to construe the language of the deed by looking only within the "four corners" of the document and give the words in a deed

5

their "general and ordinary" meaning to determine if they create any ambiguity. *Pettee v. Young*, 2001 ME 156, ¶ 8, 783 A.2d 637. An ambiguity exists if the language in the deed is reasonably susceptible to different interpretations. *Labonte v. Thurlow*, 2008 ME 60, ¶ 9, 945 A.2d 1237. "If the language of the deed is unambiguous, then the court must construe the deed without considering extrinsic evidence of the intent of the parties." *Id.* However, the deed may be read in light of the surrounding circumstances in order to better understand the intent of the parties. *Emery v. Webster*, 42 Me. 204, 206 (1856).

Because the court may consider the circumstances attendant to the execution of a deed in order to provide context for the plain language without having to make a finding of ambiguity, the court may consider the historical context as explained by the parties. In short, by 1684, the year in which this document was executed, the land within what is now the State of Maine had been under the control of several different and competing political entities. (Joint SMF ¶ 10; Town OSMF ¶ 10.) The status of private titles in this area was in doubt because of the nullification of the grants of some proprietors and the continual need for each successive political entity to confirm any prior grants of title. (Town SMF ¶ 113; Joint SMF ¶¶ 10, 47-51; Town OSMF ¶ 49.) The Town of Cape Porpoise was incorporated as a political entity in 1653 under the Massachusetts Bay Colony Charter. (Joint SMF ¶ 8.) In 1678, Massachusetts Bay Colony purchased all of the previously ungranted land within the Province of Maine from the successors to the Gorges Patent, originally granted by King James I in 1622 and confirmed by successive monarchs. (Joint SMF ¶¶ 50-51.)

On its face, this document has the appearance of a deed, but it is a deed that only acted to confirm legal title to lands previously conveyed to the Town's earliest settlers. First, the deed sets out the parties and the date on which it was executed. Next, it sets

out the authority under which Danforth could convey property. The Massachusetts Colony, the then "proprietor" of Maine, in May 1681 granted to Danforth the power to "make legal confirmation" to the inhabitants of the Province of Maine "all their Lands or proprieties to them justly appertaining or belonging within the Limitts or Bounds of the said Province." This language gives Danforth authority to confirm the titles that had been previously granted ("all their lands to them justly appertaining"). Following the authority clause, the deed recites the granting clause through which Danforth does "clearly and absolutely give, grant, and confirm" the property described in the deed. The granting clause must be interpreted in the context of the document itself.

The deed also clearly describes the property conveyed. It states:

> All that Tract or parcell of Land within the Township of Cape Porpus in said Province according to the Bounds & Limitts of the s^d Township to them formerly granted by S^r Ferdinando Gorges Knight or by any of his Agents or by the General assembly of the Massachusetts with all Priviledges and Appurces to the same appertaining or in any Wise Belonging...

This description first limits the grant to only that land within the boundaries of Cape Porpoise. It then limits the grant to that land that had been previously granted by Sir Ferdinando Gorges, by his agents, or by the General Assembly of Massachusetts to any of the inhabitants of the Town.

Despite the use of the terms "give" and "grant" in the granting clause, the property description in this document clearly limits the "grant" to those lands that had been previously granted. The Law Court, in *Banton v. Crosby*, 50 A. 86 (Me. 1901), held that when a deed, by its own terms suggests a prior grant of title, the granting clause "give, grant, convey and confirm" does nothing more than evidence the grant or act as an identification or confirmation of title. *Id.* at 86-87. The property description in this deed clearly and unambiguously references the prior grants of title made by Gorges, his agents, or the General Assembly of Massachusetts. Furthermore, under the terms of the

7

grant from Gorges to the Massachusetts Bay Colony, Massachusetts only acquired those lands that had not yet been previously granted into private hands. Using the parties' oft-quoted axiom that you can only convey that which you own, Massachusetts could not have "conveyed" to the Trustees the lands described. At the same time, given the lack of land records and the confused state of title, Massachusetts could not be sure exactly what lands were acquired through its purchase. Hence, there was a need for Massachusetts to acknowledge these previous titles and promise to not interfere with those interests.

Because the court concludes that the 1684 document does not convey any grant of new title, specifically the common and undivided lands within the Town boundaries, to the Town, the court does not need to address remainder of the Town's argument as to why fee simple title remains vested in the Town.

III.    Plaintiffs' Motion for Summary Judgment on Count I of Town's Counterclaim

While the Plaintiffs have successfully opposed the Town's motion for a ruling that the fee simple title to the beach is vested in the Town, nevertheless the Plaintiffs' own motion on the same issue must be considered independently to determine if the Plaintiffs are entitled to judgment. The Plaintiffs base their argument on conveyances made in the 1640s and 1650s to the Plaintiffs' predecessors in title by Alexander Rigby, through his agent George Cleeves. They argue that the 1684 deed did not convey new title in undivided lands to the Town but, to the extent that it did, the Beach was not part of the undivided lands. (O'Connor/Leahey/Fleming MSJ 4-6.) If, instead, the 1684 deed only confirmed prior title, the Town would have to prove a grant of the beach existing prior to the 1640s and 1650s, in order to obtain title via the 1684 deed. (Id.)

The Colonial Ordinance of 1641-47 declared that the owner of land adjoining places "about and upon salt water where the sea ebbs and flows" shall also own the

8

property to the low-water mark. *Snow v. Mt. Desert Island Real Estate Co.*, 24 A. 429, 430 (Me. 1891). After the enactment of the ordinance, conveyance of the upland presumably also conveyed the flats. *Id.* However, the intertidal zone can always be conveyed separately from the upland so there must be a call to the tidal water in order for the presumption to apply. *Storer v. Freeman*, 6 Mass. 435, 439 (1810). The terms "ocean, " "sea," "cove," or "river" (when referring to a river affected by the tides) are treated as calls to the tidal water raising the presumption of the Colonial Ordinance. *Ogunquit Beach Dist. v. Perkins*, 21 A.2d 660 (Me. 1941); *Britton v. Dept. of Conservation*, 2009 ME 60, ¶ 6, 974 A.2d 303. The terms "beach," "shore," and "sea-shore" refer to the intertidal zone bordered on one side by the high-water mark and on the other by the low-water mark. *Storer*, 6 Mass. at 439. The context of the description must be evaluated in order to determine which side of the "shore" was intended to be the boundary. *Dunton v. Parker*, 54 A. 1115, 1118 (Me. 1903). In addition to the terms used in the description, the court must also look for any evidence within the deed suggesting that there was a motive or reason for separation, such as a natural separation, value of the beach apart from the upland, separate occupation, or quasi-cultivation. *Snow*, 24 A. at 430.

The Plaintiffs claim title through Alexander Rigby who obtained title to Goose Rocks Beach through his 1643 purchase of the "Lygonia Patent," a subdivision of Ferdinando Gorges' grant received from the Plymouth Council of New England in 1622. (Joint SMF ¶ 10.) The Plaintiffs offer evidence of deeds from George Cleeves, acting as agent for Alexander Rigby, to original settlers Howell, Jeffrey, Bush, and Moore. (Joint SMF ¶¶ 15-46.) They argue that these deeds exemplify an intention by Rigby to convey the whole of Goose Rocks Beach. (O'Connor/Leahey/Fleming MSJ 17-24.) Based on later deeds that reference other conveyances, the Plaintiffs argue that additional deeds

to John Bush, Roger Willine, and Joseph Bowles can be presumed to have been made by Rigby and to exemplify that same intent. (O'Connor/Leahey/Fleming MSJ 9-10.)

Cleeves made a deed to Richard Moore and to John Bush, both on December 19, 1648 and both describing the same parcel. The Moore deed is recorded at Book I Folio 41, York County Registry of Deeds. (Joint SMF ¶ 40; Ross Aff.¶ 53, Ex. 13.) The Bush deed is recorded at Book I, Folio 36/37, York County Registry of Deeds. (Joint SMF ¶ 40, Ross. Aff. ¶ 52, Ex. 14.) These deeds describe 400 acres of land "to begine at the south west side of the little River betwixt Cape Porpus & Saco...at the point of the grove of pine trees neare unto ye sea & adjoining unto the said River, & from thence to runne upon a straight line to the sea banke southwest...." The Plaintiffs argue that the pine trees are used, not as a boundary, but as a physical monument to fix a direction and bring you to the "sea banke." *See Erskine v. Moulton*, 66 Me. 276 (1877) (when a deed uses a monument on the bank of a stream and then describes the seaward boundary as "thence by the stream" the monument is meant to give the direction of the line from the upland but not meant to restrict the boundary to the upland). The grove of pine trees in this description is not located at the sea bank. The grove marks the marsh side boundary and, therefore, cannot serve as a directional marker as contemplated in *Erskine*. Furthermore, the use of "to the sea banke" means that the sea bank is excluded from the conveyance. *See Snyder v. Haagen*, 679 A.2d 510, 514 (1996). However, nothing within the deed description gives the court context for determining the meaning of "sea bank" other than the fact that the deed also separately uses the word "sea," suggesting that the terms have different meanings.

The deed to Gregory Jeffrey was made by George Cleeves on November 1, 1651 and is recorded at Book I Folio 36, York County Registry of Deeds. (Joint SMF ¶ 40; Ross Aff. ¶ 52, Ex. 11.) That deed describes 200 acres by first describing the marsh-side

10

boundary and then the sea-side boundary as follows: "beginning at the south west side of the Lott of land granted to Joseph Bush...to run four score poole bredth Southwesterly towards Cape Porpus, & from the sea banke is to run Northwesterly four hundred pooles...." The remainder of the description states: "all the marsh ground in the said four hundred pooles in breadth between the sea and the wood side, to be contained in this grant...." The Plaintiffs argue that the use of the word "sea" in this last phrase suggests that the terms "sea" and "sea banke" are equivalent. This interpretation would trigger the presumption of the Colonial Ordinance to the effect that the deed conveyed the intertidal zone. The parallel structure of the sentence suggests that this phrase could be read "between the sea side and the wood side," thus excluding the flats by establishing the boundary on the natural separation that is the "sea bank."

The court finds that the use of the term "sea bank" in these two deeds creates an ambiguity. In other cases, the term "bank" has been interpreted as "not the sea" and "not the shore" but the "land adjacent to the shore": that is, extending "to the margin of the shore, as in case of a fresh water river the bank extends to the margin of the water." *Proctor v. Me. Central Railroad Co.*, 52 A. 933, 937 (Me. 1902). Although the term "shore" can mean either the water-side or upland-side, the phrase "to the margin of the shore" suggests that the upland-side was the intended boundary. Given this case law, the fact that each deed used both the terms "sea" and "sea bank" suggesting that each carries a different meaning, and the implication of the plain language (that a "sea bank" is an embankment of land by the sea and not the sea itself) the court cannot conclude as a matter of law that the deeds convey the flats.

11

The only other existing recorded conveyance from this period was made by Cleeves to Morgan Howell on April 17, 1648 and is recorded at Book I, Folio 136/137 in the York County Registry of Deeds. (Joint SMF ¶ 16; Ross Aff. ¶ 14, Ex. 3.) This deed describes 100 acres, 10 of which are marsh, 30 acres are upland, and the remaining 60 acres appear not to be adjacent to these other parts. As this deed, along with the other deeds, was copied and put into typeface, there are words missing from the description making it difficult to determine the actual description. The only reference to the "sea side" appears to be describing the 60 acres which are not located at Goose Rocks Beach ("and soe to take the other sixty Acres vp the Easter River, next to Cape Porpus on the East side along by the River to runne Thyrty poole East by the sea side..."). Regardless, none of the Plaintiffs claim that this grant is within their chain of title. The Plaintiffs only include it to suggest that Rigby had a common plan of conveying all of the land up to the sea. However, the ambiguity in the language of the above noted deeds belies this argument.

The Plaintiffs have not conclusively proven that Goose Rocks Beach was conveyed into private hands before the Town was incorporated or before the 1684 deed was executed. Although the court finds that the Town has not proven that the 1684 deed granted title to the undivided lands to the Town, the Plaintiffs have not proven that the Beach was not part of this common and undivided land. Evidence presented to the court, suggesting that the Town of Cape Porpoise made conveyances of common lands within the boundaries of the Town, implies that title to the common and undivided lands was vested in the Town at some point. (Town OSMF ¶ 56.)[2] Thus, the Plaintiffs have not conclusively proven that they are entitled to judgment as a matter of

---

[2] The Town also stated at oral argument that the Plaintiffs have not shown Massachusetts to have made any subsequent grants of the common and undivided land after the 1684 deed and that the records show that only the Town made such grants.

12

law on the question of whether the Town has a claim for fee simple title to Goose Rocks Beach.

IV.    Plaintiffs' Motion for Summary Judgment on Counts I and II of their Complaint

The Plaintiffs rest their motion for summary judgment on their declaratory judgment and quiet title actions on the argument that ancient conveyances dated in the 1640s and 1650s acted to convey into private hands all of the land area of Goose Rocks Beach down to the low-water mark and that their current deeds also include the beach. (Pls. MPSJ ¶ 12.) The Plaintiffs also argue that, whatever title the Town may have had in the beach, a grant into the Plaintiffs' chain of title can be presumed based upon possession of the beach for a prolonged period of time. (Id. 7-9.)

To the extent that the Plaintiffs rely on three recorded conveyances from George Cleeves as agent for Alexander Rigby to their predecessors in title of some of the area of Goose Rocks Beach to prove that they currently have title to the high dry sand and the intertidal zone, the court finds that these conveyances are not conclusive. The parties agree that the chain of title for each of the Plaintiffs cannot be completely traced back to the 1640s and 1650s. Therefore, even if these ancient grants did convey the high dry sand and intertidal zone, the Plaintiffs have not proven that the beach was not severed from the upland at some later point.

The Plaintiffs' remaining argument is that, under the doctrine of "presumption of a lost grant," the court should quiet title to the low-water line by virtue of their modern title. This argument is based on the Maine Title Standard Number 201 and on *Crooker v. Pendleton*, 23 Me. 339 (1843). (Pls. MPSJ 3.) Title Standard Number 201 states that a party has good title if a title examiner can trace the chain of title back 40 years for a warranty deed and 60 years for a quitclaim deed. In *Crooker v. Pendleton*, the Law Court was asked to determine which party had title to an island in Penobscot Bay because

13

both had deeds describing the property. The plaintiff claimed title by virtue of an 1829 grant from Massachusetts and Maine. The defendant claimed title by virtue of deeds from family members who had been in possession of the island since 1776, supposedly under a grant from the colonial government of Massachusetts which had been lost over time. The Law Court held that lost grants can be presumed against individuals and against the State, although a longer period of time may be required to use the doctrine against the State. *Id.* at 341-42. It stated that the purpose of the doctrine is similar to that of a statute of limitations and is designed to provide repose and quiet ancient possessions. *Id.* at 342. This doctrine, therefore, is analogous to the doctrine of adverse possession, except it may be used against the sovereign. *Note: The Doctrine of the Presumption of a Lost Grant as Applied Against the State,* 29 Harv. L. Rev. 88, 89-90 (1915).

In order to rely on the doctrine of presumptive grant, the Plaintiffs must, first, show that their current deeds actually describe the high dry sand and the intertidal zone and, second, show that their chain of title describing that land and the actual possession of the land goes back for a number of years. The *Crooker* case does not stand for the proposition that the court may presume a lost grant from the Town when the current owners do not have record title, even if they have been in possession for a long period of time.[3]

The court notes that some of the Plaintiffs' current deeds either do not unambiguously describe the high dry sand and intertidal zone as part of the property, or convey the property solely by reference to a recorded subdivision plan.[4] For those Plaintiffs whose current deeds do describe the beach, the Plaintiffs have not put before the court the preceding chain of title to prove that those Plaintiffs and their

---

[3] That argument sounds in adverse possession and may not be raised against the Town. *Portland Water Dist. v. Town of Standish,* 2006 ME 104, ¶ 15, 905 A.2d 829.

[4] *See e.g.* Sherman (Scannell Aff. Ex. B); Coughlin (Scannell Aff. Ex. D); Gray (Scannell Aff. Ex. L) Hastings (Scannell Aff. Ex. Q). *See also* TMF Group MSJ 2-7, 7.

14

predecessors in interest have been in possession under the presumed lost grant for a sufficient number of years.

The court is unaware of any established time frame that the Plaintiffs must use to prove their title. The Plaintiffs suggest that the Maine Title Standard 201 provides a guide. Although the Town is correct to note that the Maine Title Standards are not law, the forty to sixty-year timeframe described by the title standards provides a reasonable guide for the court to begin examination. As noted in *Crooker*, however, the time frame for presuming a lost grant against a sovereign may be longer than against an individual.

Based on the Plaintiffs' motion for summary judgment on their quiet title and declaratory judgment claims, the Plaintiffs have not conclusively proven that they are entitled to judgment as a matter of law.

## V. Plaintiffs' Motion for Summary Judgment Against the TMF Group/Harris/Driver/ Lachiatto

This group of motions for summary judgment involves the claims of the Lachiatto, Driver, and Harris defendants and the TMF Group ("Defendants") to certain rights in the beach as asserted in the parties' various counterclaims. If the Plaintiffs are successful in disposing of the remaining counterclaims to title in the beach through this motion for summary judgment, the Lachiattos, Drivers, Harris, and TMF Group will no longer have standing to challenge the Plaintiff's title in the beach.[5]

---

[5] The TMF Group sought to intervene in this case and was denied status as an intervenor but was granted standing *de bene esse* during discovery in this court's August 17, 2010 order. In this court's August 30, 2010 order, the court required the Plaintiffs make additional service by publication on all those unascertained persons, including persons owning non-beachfront property in the so-called Goose Rocks Zone. The TMF Group argues that this order eliminated the need for them to file individual motions to intervene. (TMF Reply to Mot. Strike 2-3.) The TMF Group filed an Answer and (Second) Counterclaim within the 41 days required by the publication notice, to which the Plaintiffs responded by filing a Motion to Strike. The court held argument on the Motion to Strike and declined to rule, instructing the Plaintiffs to file a Motion for Summary Judgment on the Counterclaims. Because the court did not strike the Answer and Counterclaims and ordered the Plaintiffs to file a Motion for Summary Judgment on the Counterclaims, the court intended to entertain the arguments made by the TMF Group.

15

A.    Prescriptive Easement

The Lachiatto/Driver/Harris Defendants and the TMF Group all claim an interest in the beach through prescriptive easement. The Plaintiffs argue that no prescriptive easement can be obtained because the defendants' use is not distinct from that of the general public; because one cannot obtain a prescriptive easement when the use has not been exclusive of the public; and because the individual defendants are unable to prove each element of a prescriptive easement claim against every one of the Plaintiffs. (Pls. TMF MSJ 12-24.)

1. Standing

As a threshold requirement to bringing any claim, a party must demonstrate that it has standing to bring the claim. In Maine, standing is prudential rather than constitutional, meaning that the courts may limit access to those who are best suited to bring a particular claim. *Lindermann v. Comm'n on Governmental Ethics & Election Practices*, 2008 ME 187, ¶ 8, 961 A.2d 538. For a party to prove that they are best suited to bring a claim, it must, at a minimum, at the commencement of litigation demonstrate a sufficient personal stake in the controversy. *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2010 ME 79, ¶ 7, 2 A.3d 289. This requirement has also been articulated as requiring a particularized injury, that being an effect on a party's property, pecuniary, or personal rights. *Nergarrd v. Town of Westport Island*, 2009 ME 56, ¶ 18, 973 A.2d 735. "A person suffers a particularized injury only when that person suffers injury or harm that is 'in fact distinct from the harm experienced by the public at large.'" *Id.* (quoting *Ricci v. Superintendent, Bureau of Banking*, 485 A.2d 645, 647 (Me. 1984)).

The Plaintiffs argue that the Defendants do not have standing because their injury is the same as that of the general public and the Town is the better-suited party to

16

bring that claim. The TMF Group argues that it is both factually and legally[6] distinct

from the public in a way that establishes their standing. The TMF Group asserts that as

property owners in the area of Kennebunkport known as the "Goose Rocks Zone" or

"Goose Rocks Area," they are distinguishable from the general public because of

> their location to the beach, their treatment of the beach as if it were their own, their ability to access the beach without permits (parking), their ability to rent their homes based on their proximity to the beach, their inflated tax assessed values based on their location...and their ability to access the beach through various public and private rights of way....

(TMF Group Mem. 11.) The Defendants have submitted sufficient evidence to support

the claim that there is a distinct area called "Goose Rocks Beach." (*See* TMF Group SMF

¶¶ 22, 38, 40.)

The Defendants have demonstrated a particularized injury both individually and

as a class of people known as Goose Rocks Beach residents. If the claimants are not

permitted to bring this claim, they will be deprived of their individual and/or collective

interest in the beach, which is distinct from the public's interest in the beach. Their

injury would be a loss of a property right, whereas the consequence to the public would

be a loss of use of the beach. Therefore, they have standing to assert these rights.

### 2. Use Along with the General Public

The Plaintiffs claim that Maine law prohibits "a private prescriptive easement

[from arising] where the use has been exercised with the public." (Pls. TMF MSJ 16-17

(citing Hermansen & Richards, *Roads and Easements* § 4.5.2 (2003).) However, the case

law does not clearly support this conclusion. Rather, the cases simply state that when a

public prescriptive easement is established, no private easement in the same property

---

[6]    The TMF Group asserts that they are legally distinct from the public because of the different elements required to prove a private and a public easement. (TMF Group Mem. 12.) That difference being that there is no presumption of adversity when there has been continuous use with knowledge and acquiescence when claiming a public prescriptive easement. *Lyons v. Baptist School of Christian Training*, 2002 ME 137, ¶¶ 18-19, 804 A.2d 364.

17

for the same purpose can be established. *See Hill v. Lord*, 48 Me. 83 (1861) (claimant was claiming a prescriptive easement as a member of the public, not in his individual capacity); *Wadsworth Realty Co. v. Sundberg*, 338 A.2d 470, 474 (Ct. 1973); *Garmond v. Kinney*, 579 P.2d 178, 179 (N.M. 1956).

The holdings of these cases are essentially a re-articulation of the standing requirement: the Defendants have to prove that they used the beach in a way that is distinct from the public in order to obtain a private prescriptive easement. The Defendants are not precluded from establishing a private prescriptive easement simply because the general public also used the location in question.

3. Elements of the Claim

To obtain a prescriptive easement, a claimant must prove (1) continuous use, (2) for at least 20 years (3) under a claim of right adverse to the owner, (4) with the owner's knowledge and acquiescence, or (5) a use so open, notorious, visible, and uninterrupted that knowledge and acquiescence will be presumed. *Eaton v. Town of Wells*, 2000 ME 176, ¶ 32, 760 A.2d 232. This is a mixed question of law and fact. *Striefel v. Charles-Keyt-Leaman P'shp*, 1999 ME 111, ¶ 7, 733 A.2d 984 (citations omitted).

> In the abstract what acts of dominion will result in creating title by adverse possession is a question of law. In this field the powers of the court are primary and plenary. Whether those acts were really done, and the circumstances under which they were done, raise questions of fact. In this field the powers of the jury, in the first instance, are primary and plenary.

*Webber v. Barker Lumber Co.*, 116 A. 586, 587 (Me. 1922).

"Continuous use means occurring without interruption" and only requires the kind and degree of possession that an average owner would make of the property. *Stickney v. City of Saco*, 2001 ME 69, ¶ 18, 770 A.2d 592.

The term "under claim of right" means that the claimant is in possession as an owner intending to claim the land as their own and without recognition or

18

subordination to the true owner. *Androkites v. White*, 2010 ME 133, ¶ 16, 10 A.3d 677. There is a presumption that use is under a claim of right when the claimant has proven continuous possession for 20 years with the owner's knowledge and acquiescence. *Id.* at 17. This presumption does not arise when there is an explanation of the use that contradicts the rationale of the presumption. *Id.*

"Acquiescence...means passive assent such as consent by silence and does not encompass acquiescence in the active sense such as when a use is acquiesced in by means of the positive grant of a license or permission." *Jacobs v. Boomer*, 267 A.2d 376, 378 (Me. 1970). "[T]he 'open, notorious, [and] visible' element of establishing a prescriptive easement is required 'to give notice to the owner of the servient estate that the user is asserting an easement.'" *Flaherty v. Muther*, 2011 ME 32, ¶ 83, 17 A.3d 640 (citing *Great N. Paper Co. v. Eldredge*, 686 A.2d 1075, 1077 (Me. 1996).

*a. Individualized Claims*

The Plaintiffs argue that the Defendants' responses to interrogatories and assertions in their counterclaims are insufficient to prove the elements of prescriptive easement for the 205 individually claimed prescriptive easements against each of the Plaintiffs. First, the Plaintiffs assert that proving an easement between each Defendant and each Plaintiff is a monumental task and that the claimants' answers to interrogatories, alleging generalized use of the entire length of the beach, are clearly insufficient to meeting this burden. (Pls. TMF MSJ 20.) Second, the Plaintiffs specifically claim that the Defendants have not used any specific portion of the beach in a manner hostile and in such a way as to put the Plaintiffs on notice that there were 205 individual claims being made. (Pls. TMF MSJ 20.) And, third, the Plaintiffs argue that the Defendants' responses to interrogatories are too broad to satisfy the requisite proof of a prescriptive easement. (Pls. TMF MSJ 20-21; Pls. TMF SMF ¶ 1.)

19

The use that the TMF Group members allege to have made of the beach is not sufficient to establish an individual prescriptive easement against all or any of the individual Plaintiffs. The generalized allegations of use that do not target each Plaintiff's lot are insufficient to have put any one Plaintiff on notice of an individual claim against their property such that the owner can be deemed to have had knowledge and acquiesced to that use. *See Bell v. Inhabitants of the Town of Wells*, 1987 Me. Super. LEXIS 256 * 63-64 (Sept. 14, 1987) (the back-lot owners made similarly general claim and the court noted that even where some had claimed to use the same general area each time, it was not fair to allow a person to establish a prescriptive easement on a particular lot when they never have used that lot or at least not on a consistent basis).

*b. Class Claim*

The TMF Group claimants also claim a prescriptive easement as a class of persons. The statute of limitations makes clear that a class of persons can obtain a prescriptive easement. 14 M.R.S. § 812 (2010). The only Maine case to consider whether a class of person acquired a prescriptive easement is *Flaherty v. Muther*, 2011 ME 32, 17 A.3d 640. In that case, the court considered whether use by three households was sufficient to establish a prescriptive easement for a class of nineteen lot owners. Quoting the Restatement (Third) of Property: Servitudes, section 4.1, the court states, "The relevant inquiry is what a landowner in the position of the owner of the servient estate should reasonably have expected to lose by failing to interrupt the adverse use...." *Id.* at ¶ 83. The court found that the actual use of the claimed area was "quite limited" and was insufficient to provide notice to the owner that the entire neighborhood was asserting an easement because only a few people were using her property. *Id.* at ¶ 84.

20

As distinguished from *Flaherty*, this case requires the court to determine if the beachfront owners should have been on notice of a class easement as opposed to a public prescriptive easement. The evidence that the TMF Group has put forth suggests that these residents of the Goose Rocks Beach Area can be distinguished from the general public in that many used access-ways within the neighborhood to reach the beach rather than coming from the public access; that the Plaintiffs acknowledged the Goose Rocks Area as a specific area; and the presumably more intense use of the beach by residents of the Goose Rocks Beach Area as compared to the general public. (TMF Group SMF ¶¶ 37-38.)

Acting as a class does not absolve the TMF Group from having to prove a claim against each individual Plaintiff. Where the individual claims seem deficient on the "continuous use" element, the class claim, at least potentially, could satisfy this element. The TMF Group can rely on the whole class's use of each lot to establish "continuous use." Also, the TMF Group has put forth evidence that their use of the beach was not interrupted or objected to by the Plaintiffs. (TMF Group SMF ¶¶ 21, 23, 25-27, 39.) A fact finder could find that the Plaintiffs had notice of this class of people using the beach and that they acquiesced to that use. The fact finder could also find that the Plaintiffs should reasonably have expected to at least be subjecting their ownership to an easement in favor of the back lot owners.

### iii. *Lachiatto/Driver*

The Lachiattos and Drivers are not part of the TMF Group. They have asserted claims to individual prescriptive easements. The Lachiatto/Driver claimants state that they have proven the elements for obtaining a prescriptive easement because they have (1) used the whole of Goose Rocks Beach (L/D Supp. SMF ¶¶ 3a, 3b, 5; Driver Aff. ¶¶ 4,7; Lachiatto Aff. ¶¶ 4, 6) for activities such as walking, jogging, sunbathing, and

swimming (Id.), (2) for 40 years (L/D Supp. SMF ¶ 4), (3) that the Plaintiffs have admitted in their Complaint that this was under a claim of right (Pls. Compl. ¶¶ 29, 51), (4 or 5) and that by the very nature of the beach, their use was open and notorious (L/D Mem. 7).[7] This claim fails for the same reasons as stated above regarding the individual claims of the TMF Group. However, to the extent that the Lachiatto and Driver defendants are part of the class defined as those owning property in the Goose Rocks Zone, they may continue to pursue the claim of prescriptive easement as members of a class of people.

B.    Estoppel

An easement by estoppel arises when (1) acts, words, or silence amounting to fraud induces one party, (2) the reliance on the misleading action or statement was reasonable and foreseeable, and (3) the inducement provides a benefit to the misled party that is unfair to deny. *Martin v. Me. C.R. Co.*, 21 A. 740, 742 (Me. 1890). This may arise when a lot owner takes title by reference to a recorded plan that shows subdivision amenities. *See Arnold v. Boulay*, 147 Me. 116, 121 (1951).

Herbert and Judith Cohen, who purchased their home from the Almeders, have asserted that when they rented the same house from the Almeders nothing was said about limited use of the beach. And later when they purchased the home, nothing was said about limited use of the beach. (TMF Group SMF ¶ 23.) This allegation demonstrates silence that potentially induced the Cohen's into renting and subsequently purchasing a house from the Almeders. If they can prove that the Almeders knew that the Cohens used the beach while they were renters, then sold without indicating that there are no beach rights, estoppel may be appropriate. The

---

[7]    The Statements of Material Facts on which the Lachiatto and Driver defendants rely were not timely and do not appear to have been served on the Plaintiffs. There is a pending motion for extension of time to file statements of material fact. The court grants that motion and the supplemental statements of material fact are considered by the court.

Plaintiffs deny the statements. (Pls. TMF Reply OSMF ¶ 23.) This is an issue of material fact. However, the Cohens are the only members of the TMF Group that have alleged such conduct.

An easement by estoppel can also arise when lots are conveyed by reference to a subdivision plan that depicts some areas within the subdivision as common areas or amenities for the use of those owning land within the subdivision. *Arnold v. Boulay*, 83 A.2d 574, 577 (Me. 1951). The Law Court has stated

> From this doctrine it, of course, follows that such distinct and independent private rights in other lands of the grantor than those granted may be acquired, by implied covenant, as appurtenant to the premises granted, although they are not of such a nature as to give rise to public rights by dedication. The object of the principle is, not to create public rights, but to secure to persons purchasing lots under such circumstances those benefits, the promise of which, it is reasonable to infer, has induced them to buy portions of a tract laid out on the plan indicated.

*Id.*

Several of the TMF Group defendants have asserted that they acquired title by reference to a recorded subdivision plan. There is a factual dispute about the subdivision plan drafting conventions in the early 1900s. (*See* Buisman Aff. ¶ 9; Town SMF ¶¶ 55-57, 61.) Although interpretation of a subdivision plan, like the interpretation of a deed, is a question of law, the drafting conventions are questions of fact that must be resolved before the court can interpret the plans.

### C.    Other Claims

The counterclaims for fee simple ownership, adverse possession, custom, nuisance, and quasi-easement all fail as a matter of law because the defendants who assert them fail to establish at least one element of each claim. In fact, the Lachiatto and Driver defendants do not even appear to pursue their claim to fee-simple ownership and the Harris defendants do not appear to pursue their nuisance claim. No evidence has been put before the court to support either claim. Adverse possession requires that

23

the claimant be in possession of the disputed property to the exclusion of the true owner. *Striefel v. Chaarles-Kent-Leaman P'ship*, 1999 ME 11, ¶ 17, 773 A.2d 984. This element is clearly not present in this case. Custom is not a recognized cause of action for a private easement in Maine. *Piper v. Voorhees*, 155 A. 556 (Me. 1931). Lastly, quasi-easement requires the claimant to provide evidence that the claimant's land was in common ownership with the servient land and that before land was divided the owner used the "servient" estate in the manner equating an easement. *Connolly v. Me. Cent. R.R. Co.*, 2009 ME 43, ¶ 8, 969 A.2d 919. The defendants have not properly controverted the Plaintiffs' statements of material facts asserting that none of the properties were in common ownership or asserting that there is no proof of conduct by former owners suggesting an easement.

VI.   The Lachiatto/Driver Cross-Motion for Summary Judgment on their Counterclaim for Prescriptive Easement

As noted above, the Plaintiffs brought a motion for summary judgment in their favor on this claim and the Lachiatto and Driver defendants have cross-claimed on the same issue. For the reasons stated above, the Lachiatto and Driver defendants have failed to prove their claim for individual prescriptive easements against the Plaintiffs, however, they may continue to present their case for a class prescriptive easement.

VII.   The State of Maine and Surfrider Foundation's Motion for Summary Judgment

The State of Maine answered the Plaintiffs' Complaint and asserts as a defense that the public, as a whole and as individual members, has public trust rights over the intertidal zone for general recreational purposes, thus barring the Plaintiffs' claims. The Plaintiffs' Complaint recognizes that the title that it seeks to quiet in this action is subject to the public rights to fishing, fowling, and navigating as limited by Colonial Ordinance of 1647. The State's original motion seeks to preserve for future review the argument that *Bell v. Town of Wells*, 557 A.2d 168 (Me. 1989), was wrongly decided. In

24

its supplemental motion, the State asks the court to hold that the public trust doctrine includes "the rights to stroll, swim and surf in the intertidal zone, and when doing so to engage in incidental activities such as sitting and standing." (State Supp. Mot. 14.)

The Plaintiffs have not disputed that their ownership of the beach is subject to the rights of the public under the public trust doctrine as limited by the Colonial Ordinance of 1641-1647. The State is asking the court to expand the scope of the public's use rights as described in *Bell* and most recently in *McGarvey, Jr., et al. v. Whittredge*, 2011 ME 97. This issue cannot be resolved on summary judgment.

**The entries are:**

The Plaintiffs' Motion to Strike the TMF Group Reply to Plaintiffs' Motion for Summary Judgment is DENIED. The members of the TMF Group are defendants in this case.

The Lachiatto/Driver Motion for Enlargement of Time to file its response to the Plaintiffs' Statements of Material Fact is GRANTED.

The Town of Kennebunkport's Motion for Summary Judgment on Count I of its Counterclaim and Counts I and II of the Complaint is DENIED.

The Plaintiffs' Motion for Summary Judgment on Count I of the Town of Kennebunkport's Counterclaim is DENIED.

The Plaintiffs' Motion for Partial Summary Judgment on Counts I and II of its Complaint is DENIED.

The Plaintiffs' Motion for Partial Summary Judgment Against Lachiatto, Driver, Harris and TMF Group is GRANTED as for all counterclaims raised by these parties except that of a prescriptive easement by a class and easement by estoppel which remain.

The Lachiatto/Driver Cross-motion for Summary Judgment on their claims is DENIED.

The State of Maine and Surfrider Foundation Motions for Summary Judgment are DENIED.

DATE: _12/22/11_

G. Arthur Brennan
Justice, Superior Court, Active Retired

25

ALFSC-RE-09-111


ROBERT F. ALMEDER, ET AL

Plaintiffs

v.

TOWN OF KENNEBUNKPORT and
ALL PERSONS WHO ARE
UNASCERTAINED,

Defendants


PLAINTIFFS' (ALMEDER, ET AL) ATTORNEY:
SIDNEY S.F. THAXTER, ESQ.
CURTIS THAXTER, LLC
ONE CANAL PLAZA SUITE 1000
PORTLAND ME 04112

DEFENDANT TOWN OF KENNEBUNKPORT'S ATTORNEY:
AMY TCHAO, ESQ
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY, SUITE 600
PORTLAND, ME 04101

DEFENDANTS' TMF GROUP'S ATTORNEY:
ANDRE G. DUCHETTE, ESQ
TAYLOR MCCORMACK & FRAME, LLC
30 MILK STREET, 5TH FLOOR
PORTLAND, ME 04101

INTERVENOR STATE OF MAINE'S ATTORNEY:
PAUL STERN, AAG
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA, ME 04333

DEFENDANT SURFRIDER FOUNDATION'S ATTORNEY:
NEAL WEINSTEIN, ESQ.
LAW OFFICE OF NEAL WEINSTEIN
32 SACO AVENUE
OLD ORCHARD BEACH, ME 04064

STATE OF MAINE                                              SUPERIOR COURT
                                                             CIVIL ACTION
YORK, ss.                                                 DOCKET NO: RE-09-111


ROBERT F. ALMEDER, et al.,

                    · Plaintiffs


          v.


TOWN OF KENNEBUNKPORT and
ALL PERSONS WHO ARE
UNASCERTAINED,

                    Defendants


**DECISION AND ORDER ON PLAINTIFFS' MOTION FOR RECONSIDERATION**

This court issued its Decision and Order on Motions for Summary Judgment on December 22, 2011, in part denying the Plaintiffs' Motion for Summary Judgment on Count I of the Town of Kennebunkport's Counterclaim and Motion for Summary Judgment on Counts I and II of the Complaint. The Plaintiffs moved for reconsideration, under M.R. Civ. P. 7(b)(5), on January 3, 2012. The Town of Kennebunkport filed an Opposition to the Plaintiffs' Motion for Reconsideration on January 4, 2012. The Plaintiffs' motion argues that the court erroneously shifted the burden of proof from the Defendant Town to the Plaintiffs with respect to the Town's Counterclaim Count I and erroneously required the Plaintiffs to conclusively prove their title before granting judgment on Count II (quiet title) of the Complaint. The motion will be decided on the basis of the filings without hearing.

1.  Denial of Plaintiffs' Motion for Summary Judgment on Count I of the Town's Counterclaim

The court agrees that it would be an unfair burden to require the Plaintiffs to disprove every possible argument that the Town could have asserted in its claim for fee simple ownership of Goose Rocks Beach. That is not what the court required. The essence of the Town's argument was that the high dry sand and intertidal zone of Goose Rocks Beach were never conveyed into private hands and became part of the common and undivided lands early in the Town's history. The summary judgment record contains evidence that implies that title to the so-called common and undivided lands was vested in the Town at some point after Massachusetts Bay Colony purchased the remainder of the Gorges Patent. Even though the court found that the Town failed to prove as a matter of law that the 1684 deed is the document that conveyed that interest, the implication that title to the common and undivided lands was vested in the Town raises a genuine issue of material fact to be resolved at trial.

Plaintiffs' argument was premised not only on the assertion that the 1684 deed did not convey title to the Town, but also on the assertion that title the flats was vested in private hands and, therefore, not a part of the common and undivided lands so that if and when those lands were transferred to the Town, they did not include the high dry sand or intertidal zone. The Plaintiffs failed to prove this part of their argument. Therefore, the court concluded that the Town continues to have a cause of action to prove fee title to the flats because it has asserted a genuine issue of material fact as to title and that there remains a question as to whether the 1640s/1650s deeds conveyed the beach. Therefore, the Plaintiffs are not entitled to judgment as a matter of law and the Motion to Reconsider the Plaintiff's Motion for Summary Judgment on Count I of the Town's Counterclaim is Denied.

2

2.  Denial of Plaintiffs' Motion for Summary Judgment on Count II of the Complaint

The Plaintiffs move for reconsideration on the court's denial of their motion for summary judgment only with regard to Count II, the action for quiet title under 14 M.R.S. §§ 6651-6663[1], and not the declaratory judgment count. The Law Court has noted in several instances that the statutory scheme creating the cause of action for quiet title does not eliminate any of the procedural complexity that existed under the old common law writs. *See e.g. Chickering v. Yates*, 420 A.2d 1219, 1222 (Me. 1980); *Hodgdon v. Campbell*, 411 A.2d 667, 669 (Me. 1980). The Law Court has also noted the value of the Declaratory Judgment Act, 14 M.R.S. §§ 5951-5963, for bringing actions to try title in the Maine courts. *Hodgdon*, 411 A.2d at 669. By proceeding under the Declaratory Judgment Act, rather than under the quiet title statute, the plaintiff can avoid the procedural complexities and pitfalls that are prevalent in a quiet title action.

The court has treated this action as one for declaratory judgment rather than one exclusively under the quiet title statute. *Hansen v. Weller*, 2008 Me. Unpub. LEXIS 97, *2. Accordingly, the court has not required the Plaintiffs to prove the jurisdictional elements of the quiet title cause of action and the court is proceeding to ultimately determine the rights of the parties rather than concluding, as the quiet title statute would require, whether or not the defendant should be compelled to try title under one of the other methods of trying title in Maine. Therefore, the court believes that it is improper to move for reconsideration on the quiet title count alone.

Treating the motion as one for reconsideration on the declaratory judgment action, the court also denies the motion. The parties agree that a plaintiff cannot prevail on the

[1]     The section range that the Plaintiffs designate actually describes several causes of action. An action at law for quiet title is contained in sections 6651-6654. Sections 6655-6658 contain an action for quiet title in equity. Sections 6659-6661 describe a cause of action by abutters to a discontinued road or way and section 6663 has been repealed. It appears as though the Plaintiffs have actually pursued an action for quiet title in equity because of the need to include unascertained people as defendants.

3

weakness of the defendant's title but instead must rely on the strength of their own title. *See e.g. Sargent v. Coolidge,* 399 A.2d 1333, 1342 (Me. 1979); *Blance v. Alley,* 330 A.2d 796, 798 (Me. 1975). A plaintiff may show prima facie evidence of title to the disputed property by producing a warranty deed or a quitclaim deed from a predecessor of the quitclaim deed who obtained title by a warranty deed or was in actual possession. *Sargent v. Coolidge,* 399 A.2d 1333, 1343 (Me. 1979). A deed that only conveys the grantor's "right, title and interest" in the land is not a grant of land or of a particular estate and is not prima facie evidence of title. *Id.*

The Plaintiffs admit that Plaintiffs Sherman, Coughlin, and Celi have not produced prima facie evidence of title. (Mot. Reconsideration 5, n.4.) However, the Plaintiffs submit that 23 of the Plaintiffs have "deeds [that] clearly reference that they extend to the ocean." (Id.) The Plaintiffs also state that although the Gray and Hastings Plaintiffs deeds only reference prior deeds, those prior deeds clearly reference to the ocean. (Id.) Further, the Plaintiffs state that the Town has not contested the claims of the Temerlin and Dwelley Plaintiffs. (Id.)

First, the Town did properly dispute the claims of Temerlin and Dwelley. (*See* Consol. Reply. 2, n.2.) Second, the deeds submitted in Exhibit B to the Plaintiffs' motion, providing the metes and bounds descriptions of the Gray and Hastings Plaintiffs' properties, were not in the summary judgment record for the court to consider when making its decision. Lastly, the documents submitted to the court in support of the Joint Statement of Material Facts attached to the Affidavit of Gordon Scannell, Jr. do not show prima facie evidence of title for most of the Plaintiffs. The court notes, but withholds judgment, that a few of the Plaintiffs' current deeds appear to actually provide prima facie evidence of title (including Asplundh, Flynn, Gerrish, O'Connor/Leahey, Raines, Sandifer, Scribner, and Paley). However, because the Town

4

still has a viable claim, establishing prima facie evidence of title alone does not entitle the Plaintiffs to judgment as a matter of law.

The Plaintiffs' Motion for Reconsideration is DENIED.

DATE: _1/18/12_

G. Arthur Brennan
Justice, Superior Court, Active Retired

PLAINTIFFS' ATTY:

SIDNEY ST. F. THAXTER, ESQ.
CURTIS THAXTER, LLC
ONE CANAL PLAZA, SUITE 1000
PORTLAND, ME 04112-7320


DEFENDANT, TOWN OF KENNEBUNKPORT'S ATTY:

BRIAN WILLING, ESQ.
DRUMMOND WOODSUM & MACMAHON
84 MARGINAL WAY, SUITE 600
PORTLAND, ME 04101

5

STATE OF MAINE

YORK, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. RE-09-111
GAB-YOR - 10/16/2012

ROBERT F. ALMEDER, et al.,

Plaintiffs

v.

TOWN OF KENNEBUNKPORT and
ALL PERSONS WHO ARE
UNASCERTAINED,

Defendants

PARTIAL JUDGEMENT

## PROCEDURAL HISTORY

In October 2009 the Plaintiffs, owners of beach front property at Goose Rocks Beach in Kennebunkport, Maine, brought an action seeking a declaration that they hold fee title to the low water mark and seeking to quiet that title. The original named defendants were the Town of Kennebunkport and all persons known and unknown who claim ownership or easement rights to the property.

Certain issues arose relating to service of process on non-plaintiff beach front property owners and the general public. As a result, an order issued on August 30, 2010 requiring the parties to serve process on all beach front owners and for service by publication on the general public.

The State of Maine moved to intervene citing the public interest in maintaining access to Maine's beaches. This motion was granted and the State joined as a party to the case. The State seeks to have the scope of the public easement pursuant to the

public trust doctrine expanded in light of recent decisions of the Maine Supreme Judicial Court.

A group of owners of property located within the Goose Rocks zone of the Town but not on the beach front moved to intervene. This group of "back-lot" owners was represented collectively by the law firm of Taylor, McCormack and Frame (TMF). Originally they were granted provisional status to participate in pre-trial proceedings and, eventually, granted intervenor status collectively as parties in the case.

Several back-lot owners, not represented by TMF, also moved to intervene. Of these only the Lachiattos and the Drivers actively pursued the motion. They participated in the proceedings as members of the "back-lot" class.

The Town answered and counterclaimed that it holds title to the beach front property. The Town also counterclaimed for an easement by prescription or by custom. The TMF Group and the Lachiattos and Drivers likewise counterclaimed on the theory of easements by prescription.

Cross-motions for summary judgment on the competing title claims failed and following a conference an order issued on July 9, 2012 setting the counterclaims relating to easement issues for trial first and reserving the claims related to title for later consideration.

Trial commenced on August 20, 2012. An issue arose concerning the non-plaintiff beach-front owners who had been served but had not answered or otherwise actively participated in the litigation. The parties and the court agreed that the judgment in this case would bind only the Plaintiffs, the Town, members of the TMF Group and the State. Beach-front property owners joined as parties-in-interest only would not be bound by this judgment unless they expressly agreed to be so bound.

2

The trial relating to the easement counterclaims was conducted between August 20th and September 6th, 2012. The parties filed proposed findings of fact and conclusions of law on September 21st and closing arguments were held on September 25th. Following trial, judgement will enter in favor of the Town and the TMF Group and the State's request for findings on the public trust doctrine in the intertidal zone will be Granted.

## FACTS

Goose Rocks Beach is a two-mile stretch of sandy beach lying between the Batson River and the Little River in Kennebunkport, Maine. There are 110 beach-front lots owned by 95 owners. Nine of these are vacant lots owned by either the Town or the Kennebunkport Conservation Trust. The developed lots are separated from the beach by either a seawall or landscaping. The vacant lots are situated in approximately the middle of the beach and the area seaward of these lots has been referred to by many as the "public beach".

The Plaintiffs are 29 beach-front owners who claim ownership of the beach to the low-water mark. They recognize that a public easement exists over the intertidal zone for purposes of fishing, fowling and navigating, but assert that the general public and members of the TMF group have no easement rights over their properties for general recreational purposes. In addition to the Plaintiffs, seven beach-front owners, joined as parties-in-interest, have expressly agreed to be bound by this judgment. These are:

1) David L. Eaton & Jennifer L. Scully-Eaton;

2) Susan K. Lewis, Trustee of the Amended and Restated Susan K. Lewis Resident Trust;

3) Heather Vicenzi, Trustee of the George A. Vicenzi Trust;

4) Mary L. Emmons, Emmons Family Realty Trust;

3

5)      Anne E. Clough;

6)      John A. Parker and Jeannette M. Parker; and

7)      Marie B. Henriksen.

By agreement of the active parties to the case, and with the court's approval, the other parties-in-interest will not be bound by this judgment.[1]

The Goose Rocks zone is a discreet area within the Town. It is bounded by Route 9, the Dyke Road, the New Biddeford Road and the beach. The beach front properties stretch along the Kings Highway. From the road there are more than 20 public and private access ways to the beach. There are at least 5 public access ways spread across the beach front. Public parking is permitted on Kings Highway and along sections of Dyke Road. Currently there are 173 parking spaces available for public use.

In colonial times beaches, including Goose Rocks Beach, were used as public highways for safety reasons. They were also used for driving livestock, harvesting seaweed, clamming and they provided access to marshland for cutting hay. Town records disclose that regulations relating to these activities were established before the Revolutionary War.

By the late 1800's Goose Rocks Beach began to emerge as a tourist destination. Town records from the 1890's comment on the growing tourist trade at Goose Rocks Beach. In the early 1900's various guesthouses and hotels were available to tourists and these commercial ventures advertised the virtues of the beach for a wide range of recreational activities. In the 1920's and 1930's a variety of tourist related businesses were in operation at the Beach: a casino, bowling alley, a general store and several gift

---

[1]     The Town and certain beach-front owners and back-lot owners have reached a settlement of their claims. None of the Plaintiffs have joined in that settlement.

4

shops and restaurants. Several witnesses, notably Joan Junker and Ralph Smith, testified to their own use of the Beach and the use of the Beach by members of the general public for recreational purposes during the 1920's and 1930's. There were two "auto-trailer" camps on beach front lots. Members of the public could park at these camps for a fee and use the Beach. In addition, numerous photographs from the 1930's and 1940's depict cars parked along the length of Kings Highway adjacent to the Beach during summer days. The evidence is clear that beginning in the late 1800's up through the 1940's Goose Rocks Beach was a popular tourist destination for members of the general public from surrounding towns and from other states. The Beach was the attraction. People used the Beach for a full range of recreational activities, including walking, swimming, sun bathing and a variety of beach related games.

In 1947 a major forest fire swept across Maine and a significant number of residential and commercial structures at the Beach were destroyed. As property owners rebuilt, the Beach became more residential and less commercial. However, the general public continued to use the Beach for a full range of recreational activities. Also, more intense development of the back-lot properties began after the fire. Typically, these properties are rented for some portion of the summer season. This has tended to increase the number of people using the Beach. A number of beach front properties have been remodeled and enlarged. Many of these too are rented during the summer, further contributing to increased use of the Beach.

Beginning in the 1700's and continuing to the present the Town has imposed regulations on the use of the Beach. Town records demonstrate that regulations were established with respect to livestock on the Beach, clamming and seaweed harvesting. More recently the Town has established regulations concerning dogs on the Beach and fire regulations. In the early 1900's the Town provided extra police protection at the

5

Beach during the summer. The Town began establishing parking regulations at the Beach in the early 1930's. The Town maintains the public access ways to the Beach; has constructed seawalls; provides waste containers for litter and continues to provide extra police presence during the summer. Beginning in the 1950's and continuing until the 1990's the Town provided lifeguard service at the Beach. There was a lifeguard stand at or near the "public" area of the Beach and a series of ring buoys placed strategically up and down the length of the Beach. William Joel testified that he served as a lifeguard at the Beach during the summers of 1952 and 1953. He was expected to traverse the full length of the Beach at least twice a day and check on the ring buoy stations. He also gave swimming lessons, which were available to the general public. Several other Town employees gave swimming lessons over the years. In 1994 the Town discontinued the lifeguard service and replaced it with a police officer dedicated to serve the Beach.

Beginning in the late 1920's and continuing, the Town appropriated funds to promote the use of the Beach by tourists. For some period the Town provided bus service and supervision for children from the Town to the Beach for summer recreation. The evidence is clear that at least from the early 1900's the Town has consistently encouraged and facilitated the use of the Beach by the general public.

Sixty-six witnesses testified at trial. These included beachfront owners, back-lot owners and members of the general public. The court will not undertake to summarize each witness's testimony. However, the overwhelming weight of this testimony, whether from beach-front owners or back-lot owners, or others, was that while people tended to use the area in front of their own properties or near a public access point most frequently, nearly all used the Beach "from river to river" frequently depending on what activity was being undertaken at the time. Many walked the

6

beach daily; many walked to certain locations so children could play in tidal pools; some walked to certain spots to collect sand dollars or search for crabs. Beyond the general recreational uses associated with the beach itself, for decades the public has used the beach for a variety of ocean-based activities: boating, water-skiing, tubing, rafting snorkeling and, more recently, kayaking, surfing, wind-surfing and paddleboarding. Nobody felt restricted to stay within the confines of their own property or near the public access right-of-ways. None of the witnesses testified that they asked for, or thought they needed to ask for, permission from beach front owners to engage in ordinary recreational activities such as walking, swimming or beach games. Beach-front owners did not object to the use of their property for ordinary beach type recreational activities. Only when someone wanted to use property beyond ordinary recreational purposes – such as storing a boat on the dry sand or holding an event like a wedding or large family party – was permission sought from the beach front owners and only when beach users were engaged in disruptive or objectionable behavior – drinking, rowdiness or potentially dangerous activities – did beach front property owners request that the offending parties leave their property.

Nearly every witness expressed the view that they had a right to use the beach for ordinary recreational purposes. They felt no need to ask permission from beach-front owners and, absent objectionable behavior, they were never asked to leave the Beach. Norman Merrill expressed the view – held by many – that if he saw a "no trespassing" sign on the Beach he would ignore it and continue to use it as he always had.

Several beach-front owners in recent years have placed no trespassing signs on or about their property. These have been placed more to prevent people from coming off the dry sand and onto their landscaped property, or to prevent people from using

7

private access ways to or from the Beach, rather than to prevent people from using the Beach itself for ordinary recreational purposes. There are a few examples of occasional requests by beach-front owners for people on the beach to "move along", as Robert Scribner testified. But from among the testifying witnesses, this was a rare exception and not the rule.

While there was more intense use of the Beach in the "public" area, this is likely attributable to the fact that the beach-front lots in that area are vacant; on-street parking is available and the Tides Inn, a hotel, is across the street. The general public, back-lot owners and other beach-front owners used the entire beach, both dry and wet sand. Howard Whitehead, a back-lot resident since 1958 testified to large softball games at the Little River end of the beach and Richard Johnson testified to softball games with teams from the Town at the Batson River end of the beach. Many of the witnesses testified they roamed freely on the Beach, from one end to the other, depending on what type of activity they were engaged in at the time.

The Beach was used by the public year round. While summer brought the most intense use, there was testimony concerning horseback riding on the beach in the off-season. People walked the beach in all seasons. Occasionally people cross-country skied on the Beach. Richard Johnson showed a photograph of a plane on the beach. Wayne Fessenden testified he learned how to drive on the Beach. The evidence is clear that the general public, including the back-lot owners used the entire Beach, both wet and dry sand, for recreational activities, albeit that some areas – the "public" area for example – were used more intensely than other areas.

Many of the Plaintiffs rent their properties for periods during the summer and some own back-lot properties as well as beach front properties. Most use a rental agent to handle these short-term rentals. Maria Junker has acted as a rental agent since

the mid-1980's. Access to the entire beach is the major attraction for renters, who are members of the general public. Advertising materials used to attract renters emphasize access to the entire Beach. No instructions were given to renters limiting their use of the Beach to the confines of the property lines – they could use the entire Beach. The Plaintiffs were aware of this pattern of use and acquiesced in this practice.

William Forrest's testimony is instructive on how people understood their Beach use right. Mr. Forrest grew up in Kennebunkport and as a child and young adult used the Beach with friends for a full range of recreational activities. He never asked for permission from beach front owners to use the beach and, accept for one occasion when his group was rowdy, he was never asked to leave the beach. He moved away after college, but moved back to Kennebunkport in 1988. He and his family used the Beach either as members of the public or as seasonal renters until 2004, when he purchased beach-front property. He has given permission to neighbors to store a boat on the dry sand on his property and he has called the police when late night rowdy behavior was occurring on the beach in front of his property, but he does not object to ordinary recreational activity on the beach in front of his property. He expressed the view that it would be impractical to ask people engaged in ordinary recreational activities – walking, sunbathing, and picnicking – to leave his property. That was the general attitude of the Plaintiff group. It would be impractical to object to the public using the Beach for general recreational purposes, so they acquiesced in that use.

In a variety of settings, the Town has acknowledged that beach-front owners have fee title to the mean low water mark of their property. The Town's Comprehensive Plan states that the Beach is private. During certain zoning hearings the Town Manager made reference to the Beach as being private. Certain police department policies relating to enforcement procedures at the Beach describe the Beach

9

as private property. The Plaintiffs assert these statements undermine the Town's claim for a prescriptive easement. However, as discussed later, these statements are not determinative of the issue.

## CONCLUSIONS RELATING TO TOWN'S COUNTERCLAIMS

At issue in this phase of the case are Counts IV for prescriptive easement and Count VI for easement by custom. Essentially, the Town seeks to establish that the general public has acquired rights to use the entirety of Goose Rocks Beach – both wet and dry sand – for ordinary recreational purposes notwithstanding that the Plaintiffs may own the fee title to the low-water mark. The Town has standing to assert this claim on behalf of the general public. *Town of Manchester v. Augusta Country Club*, 477 A.2d 1124 (Me. 1984).

Maine law provides that beach front owners hold title to the high-dry sand and intertidal zone subject to a public easement to fish, fowl, navigate and undertake uses reasonably incidental thereto within the intertidal zone. *Bell v. Town of Wells*, 557 A.2d 168 (Me. 1989).

To succeed on its claim for prescriptive easement, the Town must prove that the public 1) continuously used the Beach for at least 20 years, 2) under a claim of right adverse to the owner, 3) with the owners knowledge and acquiescence, or 4) a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed. *Eaton v. Town of Wells*, 2000 ME 176; 760 A.2d 232. When land is wild and uncultivated, Maine applies the rule that open and continuous use for the prescriptive period raises a rebuttable presumption that the use was permissive. *Eaton*, supra. The test of public use is not the frequency or intensity of the use, but use by people who are not separable from the general public. *Eaton*, supra.

10

There is no question here that members of the general public have been using Goose Rocks Beach from "river to river" for general recreational purposes for at least one hundred years. While this use has been more intense in some areas – the "public" area and around public access points – nevertheless, the great majority of witnesses testified to a variety of typical beach recreational activities that extended across the entire length of the Beach.

The great majority of the witnesses – beach-front owners, back-lot owners or members of the public testified that they believed they had a right to use the full extent of the Beach for general recreational purposes. They never asked for permission to use the Beach or thought they had to ask and, except for some isolated incidents, beach-front owners did not object to this use. When objections arose, they related to objectionable behavior such as drinking or rowdy behavior. Only in cases when someone contemplated activity beyond usual beach activity – such as storing boats, or holding a wedding ceremony – did they ask permission from a beach-front owner.

Beginning in the early 1900's, the Town has consistently acted with the understanding that the public had a right to use the Beach for general recreational purposes. The Town has appropriated funds to promote tourism at the Beach; it has created and maintained access ways and other facilities for public convenience at the Beach; for significant periods it has provided lifeguard and dedicated police service at the Beach; it has established a variety of regulations for parking and other uses at the Beach; it has utilized the Beach to provide recreational opportunities for children from other sections of Town.

The evidence is clear that the Town and the general public have claimed a right to use the entire Beach, both wet and dry sand, for general recreational purposes for

11

approximately one hundred years or more and this use has been open and visible to the Plaintiffs or their predecessors in title.

The more challenging issue for the Town is proving that the public recreational use occurred with the knowledge and acquiescence of the Plaintiffs or their predecessors in title, rather than permissively. When a public easement is at issue, the presumption that acquiescence may be proven by open, notorious, visible and uninterrupted use for the prescriptive period alone is negated and a rebuttable presumption of permissive use arises. The Town must prove acquiescence by proving that the use was without the express or implied consent of landowners and has been undertaken in a manner that provided the owners with adequate notice that the owner's property rights were at risk. *Eaton*, supra; *Lyons v. Baptist School of Christian Training*, 2002 ME 137, 804 A.2d 364. Clearly, the Plaintiffs or their predecessors knew the extent to which the public used the Beach.

Acquiescence is consent by silence. It may be inferred when there is a long history of passive assent or submission to a use. *Stickney v. City of Saco*, 2001 ME 69, 770 A.2d 602. Logically, silence alone cannot constitute implied consent. The great majority of witnesses, many of whom had used the Beach for decades, testified that they believed they had a right to use the Beach for general recreational purposes and this right – except in cases of objectionable behavior – was never challenged by the Plaintiffs. It was, as William Forrest said, impractical to attempt to prevent the public from engaging in non-disruptive general recreational activities on the Beach. The Court finds and concludes that the Town has proven that the public has used the entirety of Goose Rocks Beach, including the wet and dry sand, continuously for approximately 100 years with the knowledge and acquiescence of the Plaintiffs or their predecessors in title.

12

Two other points raised by Plaintiffs in their defense against the Town's claim of prescriptive easement warrant further comment.

The Plaintiffs argue that beginning in the mid-1970's various acknowledgements by the Town in Town publications, at public meetings or in police policy statements to the effect that the Beach is private property fatally undermine the Town's claim for a prescriptive easement. First, here, as in *Eaton*, the fact that the Town acknowledges that the Plaintiffs own their property does not mean that the public has no claim to the lesser interest of an easement. Further, these various statements by the Town all occurred after the mid-1970's. The public prescriptive easement found to exist here matured most likely before 1947, when the commercial uses at the Beach were more intense, but clearly matured before any of these statements were published. Once the easement attached, subsequent statements by the Town would not affect its continued existence.

The Plaintiffs argue that the Town has failed to prove the elements necessary to establish a prescriptive easement with respect to each discrete parcel of property owned by each Plaintiff. While accurate that the Town must establish the elements of its claim against each Plaintiff, that does not mean that the proof requires a showing that the Beach was used every day during the prescriptive period, or that the same members of the public used the same area for the same purpose on a continuous basis. Here, as in *Eaton*, supra, the evidence establishes that the general public used the entire Beach for a broad range of general recreational purposes continuously throughout the prescriptive period.

## CUSTOM

There is no Law Court case clearly recognizing that an easement can be acquired through custom. Indeed, the Law Court's comments on the subject suggest that this

13

theory is disfavored. *Bell v. Town of Wells*, 557 A.2d 168 (Me. 1989). However, in the interests of completeness the issue will be addressed.

To acquire an easement by local custom the Town must prove:

1) The custom must have been in effect "so long as the memory of man runneth not to the contrary";

2) The right must have been exercised without interruption;

3) The use must be peaceable and free from dispute;

4) The use must be reasonable;

5) The land impressed with the custom must have boundaries;

6) The custom must be obligatory; and

7) The custom must not be repugnant to other customs or law.

The evidence establishes that the Beach has been used for public purposes going back to the 1600's. It was first used as a roadway for travel for both people and livestock. It was used as a source of seaweed and for harvesting clams. Beginning in the late 1800's and continuing uninterrupted until today, the Beach has been a tourist destination used by the general public, most intensely during the summer, but during the rest of the year as well. The most senior witness at trial (age 90) testified to harvesting seaweed with his grandfather at the Beach during the late 1920's and then using the Beach for recreational activities with his family for many years thereafter. Numerous witnesses testified to family histories of beach use going back to the early 1900's. The Beach has been used for public purposes for as long as anyone can remember.

This use has been uninterrupted. The great fire of 1947 destroyed many, but not all, the cottages and businesses at the Beach. While much was lost, life continued at the Beach and it continued to be used by the public for general recreation.

14

The use has been peaceable. Indeed virtually every witness testified that the great attraction to the Beach was the sense of a harmonious community. Former Police Chief Bruni testified that during his long career as a member of the police department there were very few incidents at the Beach. Other than occasional disruptive behavior by individuals, the Beach was a quiet, peaceful place. Only this litigation has undermined that tranquility.

The use was reasonable – ordinary recreational activity common to any each beach setting.

The Beach has defined boundaries – from the Little River to the Batson River, from the ocean to the seawall.

The custom was obligatory – the public – which when they left the confines of their own properties included the Plaintiffs – used the entire Beach without asking permission and without objection.

The custom was not repugnant to either custom or law. The use was entirely consistent with the use of beaches throughout the State.

I find and conclude that if easement by custom is a viable claim under Maine law, then the Town has proven facts to establish that claim in this case.

## TMF GROUP'S COUNTERCLAIM

The Goose Rocks Beach zone is well defined as the area between Route 9 and the ocean and the Batson and Little Rivers. TMF Group members own property within this zone. As a group, they claim to have acquired a prescriptive easement to use Goose Rocks Beach in its entirety for general recreational purposes. 14 M.R.S.A. §812. There are approximately 180 members of the TMF Group.

Members of the TMF Group used the entire Beach, both wet and dry sand, for a wide range of general recreational activities: walking, swimming, boating, tide pool

wading, sand castle building and a variety of games. They also used the Beach for a variety of ocean-based activities: boating, water-skiing, kayaking, surfing, rafting and paddleboarding. By virtue of their proximity to the Beach, they likely used the Beach more frequently and more intensely then members of the public at large.

Group members accessed the Beach using public access points, but many also had deeded access rights not available to the general public. Thus, group members were dispersed all across the Beach.

The Group members who testified all stated that they never asked for permission to use the Beach and their rights to use it were never challenged except in cases of disruptive behavior. They sought permission from beach front owners only when a use would involve more than general recreation – for example storing a boat, or conducting a large gathering such as a wedding or large family cookout.

Group members testified to this pattern of use going back decades: Stuart Flavin to the 1940's; Joan Junker testified to historical family use going back to the 1920's and personal use going back to the 1930's.

As was the case for the Town's claim of a public prescriptive easement, the TMF Group must prove: 1) Continuous use for at least 20 years; 2) under a claim of right adverse to the owners; 3) with the owners knowledge and acquiescence; or 4) a use so open, notorious visible and uninterrupted that knowledge and acquiescence will be presumed. *Eaton*, supra. Without question, substantial numbers of the TMF Group having been using the Beach without interruption in a continuous, open and visible manner for eighty or more years. The Group members who testified stated they believed they had a right to use the Beach – indeed Norman Morell testified that if he saw a no trespassing sign he would ignore it and continue using the Beach.

16

The Plaintiffs argue that because many of the members of the TMF Group were their neighbors and friends, the presumption of permissive use mandated by *Lyons* when a public, rather than a private, easement is claimed is particularly strong here. However, a great many of Group members rented their properties to strangers for portions of the summer. The renters were members of the general public who did not share bonds of friendship with the Plaintiffs.

As in the Town's prescriptive easement claim, the TMF Group has proven that the Plaintiffs have long known that Group members and the public who rented from Group members used the entire Beach for general recreational purposes and have acquiesced in that use.

## STATE CLAIMS

The State sought and was granted intervenor status to advocate on behalf of the public, citing the public interest in maintaining access to Maine's beaches. While recognizing that *Bell v. Town of Wells*, 557 A.2d 168 (Me. 1989) currently remains the law, it wishes to preserve for review the argument that *Bell* was wrongly decided. It also argues that the scope of the public's rights delineated in *Bell* has been expanded by the more recent decision in *McGarvey v. Whittredge*, 2011 ME 97. It seeks a declaration describing the extent to which the public's rights have thus been expanded.

Access to the ocean and use of tidal lands by the public has been controversial since the founding of this country in nearly every state bordering the ocean. It has been confirmed that the public does have a right, pursuant to the public trust doctrine, to use the ocean in Maine. *See, e.g., McGarvey v. Whittredge*, 2011 ME 97, ¶ 12, 28 A.3d 620; *Britton v. Dep't of Conservation (Britton I)*, 2009 ME 60, ¶¶ 2, 10 n.5, 974 A.2d 303, 305, 307; *Norton v. Town of Long Island*, 2005 ME 109, ¶¶ 21, 32, 883 A.2d 889, 896, 899; *see generally Andrews v. King*, 124 Me. 361, 362-63, 129 A. 298, 298-99 (1925); *see also Marshall*

17

*v. Walker*, 93 Me. 532, 536-37, 45 A. 497, 498 (1900), and cases cited therein. However, this right is not without limit.

The right of the public to reach and use the ocean depends on the zone of property in which the public's activities take place: The high dry sand, above the mean high-water mark; the submerged land, below the mean low-water mark; or the intertidal area, which exists between the mean high-water mark and the mean low-water mark. *McGarvey*, 2011 ME 97, ¶13, 28 A.3d 620. The owner of the upland property holds title down to the mean low-water mark, including any area of high dry sand. *Id* at ¶15; *Bell v Town of Wells (Bell II)*, 557 A.2d 168, 171, (1989). The State of Maine owns the submerged land below the mean low-water mark, holding the land in trust for the public. *McGarvey*, 2011 ME 97, ¶14, 28 A.3d 620; *Britton II*, 2011 ME 16, ¶ 6, 12 A.3d 39, 42. The intertidal zone is held by the upland owner subject to certain uses by the public reserved in the public trust by early English Law. *McGarvey*, 2011 ME 97, ¶16, 28 A.3d 620. The question at hand is how the intertidal zone may be used by the public under the common law of the public trust doctrine, given the facts proven at trial.

The Colonial Ordinance of 1641-47 of the Massachusetts Bay Colony, enacted prior to Maine's separation from Massachusetts, codified these property rights. Whittlesey, *Law of the Seashore, Tidewaters and Great Ponds in Massachusetts and Maine* at xxxvi-xxxvii; *The Book of the General Lauus and Libertyes Concerning the Inhabitants of the Massachusets (1648), reprinted in The Laws and Liberties of Massachusetts* 35 (1929). The Colonial Ordinance designated the rights to the property down to the mean low-water mark in the upland fee holder, reserving for the public the right to fish, fowl and navigate in the intertidal zone. *Id*. In the 1810 case, *Storer v. Freeman*, the Massachusetts Supreme Judicial Court incorporated the Colonial Ordinance into common law. *Bell v. Town of Wells (Bell I)*, 510 A.2d 509 (1986); *Storer v. Freeman*, 6 Mass. 435, 438 (1810). In

18

1820, this law was incorporated into Maine law by the Maine Constitution when Maine separated from Massachusetts. Me. Const. art. X, §§3-5; *Bell I*, 510 A.2d at 513-514.

Over the past nearly two centuries, there has been much contest about what activities are permissible by the public in the intertidal area. In *Bell II*, the Law Court described their interpretation of the Colonial Ordinance over time as "sympathetically generous." *Bell II*, 557 A.2d at 173.

> For example, the operator of a power boat for hire may pick up and land his passengers on the intertidal land, *Andrews v. King*, 124 Me. 361, 129 A. 298 (1925); and "navigation" also includes the right to travel over frozen waters, *French v. Camp*, 18 Me. 433 (1841), to moor vessels and discharge and take on cargo on intertidal land, *State v. Wilson*, 42 Me. at 24; and, after landing, "to pass freely to the lands and houses of others besides the owners of the flats," *Deering v. Proprietors of Long Wharf*, 25 Me. 51, 65 (1845). Similarly, we have broadly construed "fishing" to include digging for worms, *State v. Lemar*, 147 Me. 405, 87 A.2d 886 (1952), clams, *State v. Leavitt*, 105 Me. 76, 72 A. 875 (1909), and shellfish, *Moulton v. Libbey*, 37 Me. 472 (1854).

*Id.* However, in that same case, the Law Court limited the rights and activities allowed by the public in the intertidal zone to only those rights listed, namely the rights to fish, fowl and navigate, and activities pursuant to fishing, fowling and navigating, in the intertidal zone. The Court expressly held that there was no public right to engage in general recreational activities. *Bell II*, 557 A.2d at 180.

In 2011, the Law Court revisited its holding in *Bell II* in order to determine whether scuba diving could be considered "navigation" under the Colonial Ordinance and therefore a permissible use by the public in the intertidal zone. *McGarvey*, 2011 ME 97, ¶¶5-7, 28 A.3d 620. The Court unanimously held that there existed a public right to cross the intertidal zone in order to scuba dive. *Id.* at ¶1. However, the six justices who participated split evenly on the issue of whether the public's right to cross the intertidal zone to scuba dive was because scuba diving is a form of navigation and therefore a right reserved to the public under the Colonial Ordinance, or because the public has

19

rights to use the intertidal zone for activities beyond fishing, fowling, and navigating under the Colonial Ordinance, thus expanding the holding in *Bell II. Id.* at ¶¶1, 71, 51.

In Justice Levy's opinion, as joined by Justices Alexander and Gorman, Justice Levy narrowly interpreted *Bell II* and preceding case law on the public's rights within the intertidal zone. *McGarvey*, 2011 ME 97, ¶¶59, 70, 78, 28 A.3d 620. Justice Levy determined that scuba diving falls within the Colonial Ordinance's definition of navigation. Similar to traditional navigational activities, scuba diving requires specific equipment such as a breathing device, swim fins, and a weight belt. *Id.* at ¶75. Furthermore, it can be differentiated from bathing or swimming, activities not reserved for the public under the Colonial Ordinance, because scuba divers, unlike bathers or swimmers, "pass[] freely over and through the water without any use of the land underneath." *Id.* at ¶76; *Butler v. Attorney Gen.*, 195 Mass. 79, 84, 80 N.E. 688, 689, (1907).

In Chief Justice Saufley's opinion, as joined by Justices Mead and Jabar, Chief Justice Saufley determined that the public has rights to the intertidal zone beyond fishing, fowling and navigating, including crossing the intertidal zone in order to scuba dive. *McGarvey*, 2011 ME 97, ¶51, 28 A.3d 39. As far back as Lord Hale's Treatise in 1787 and under Colonial Ordinance itself, the public had the right to walk across the intertidal zone in order to engage in recreational activities. *Id.* at ¶¶35-41. "Until our decision in *Bell II*, 557 A.2d at 173, we had never treated the language of the Colonial Ordinance as permanently defining or circumscribing the sum of the public's rights to the intertidal zone." *Id.* at ¶38.

The State has asked this Court to consider, given the evidence presented, whether the public has the right to engage in certain activities in the intertidal zone. Pursuant to *McGarvey*, the Court finds and concludes that the public has the right to engage in, or cross over in order to engage in "ocean-based activities" which can be

20

categorized as fishing, fowling or navigating in the intertidal zone. *Id.* at ¶¶51, 71. This includes the right to cross the intertidal zone for such "ocean-based", waterborne activities as jet-skiing; water-skiing, knee-boarding or tubing; surfing; windsurfing; boogie boarding; rafting; tubing; paddleboarding; and snorkeling. This does not include swimming, bathing or wading; walking; picnicking or playing games in the intertidal zone.

The entries will be as follows:

1)      On Counts IV and VI of the Town's counterclaim, Judgement for the Town to the effect that it has established easements by prescription and custom for general recreational activities on the entirety of Goose Rocks Beach, both wet and dry sand.

2)      On the TMF Group's counterclaim, Judgement for the TMF Group as a class, but not individually, for a prescriptive easement for general recreational activities on the entirety of Goose Rocks Beach, both wet and dry sand.

3)      The Lachiattos and the Drivers as members of the TMF class, but not individually, have prescriptive rights co-extensive with the rights of members of the TMF class to use Goose Rocks Beach.

4)      The State as intervenor on behalf of the public has established that the public, under the public trust doctrine, has rights to use the intertidal zone at Goose Rocks Beach for the ocean-based activities described above.

Dated: October 16 , 2012

G. Arthur Brennan
Justice, Superior Court, Active Retired

Lead Attorney for Plaintiffs:

Sidney St. Thaxter, Esq.
Curtis Thaxter, LLC
One Canal Plaza, Suite 1000
PO Box 7320
Portland, ME 04112-7320

Lead Attorney for the Town of Kennebunkport:

Brian Willing, Esq.
Drummond Woodsum
84 Marginal Way, Suite 600
Portland, ME 04101-2480

Lead Attorney for TMF Group

Andre Duchette, Esq.
Taylor McCormack & Frame, LLC
30 Milk Street 5th Floor
Portland, ME 04101

For the State of Maine:

Paul Stern, A.A.G.
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006

Pro se Litigants:

Alexander Lachiatto
Judith Lachiatto
12 Belair Avenue
Kennebunkport, ME 04046

Richard Driver
Margarete Driver
6 Marshview Circle
Kennebunkport, ME 04046